Luisa Espósito Avilés, peticionaria y apelante, *v.* María Guzmán Acosta Vda. de Espósito, opositora y apelada.

No. 6148.—*Sometido:* Junio 20, 1933. *Resuelto:* Noviembre 29, 1933.

*García Méndez & García Méndez,* abogados de la apelante; *Arturo Reichard,* abogado de la apelada.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Luis Espósito Avilés tenía la vida asegurada en "El Ancora," una compañía de seguros de esta Isla. No designó beneficiario especial y en tal caso de conformidad con los reglamentos de la compañía la póliza era pagadera a sus herederos. Murió sin haber otorgado testamento y la corte declaró sus únicos y universales herederos a sus hermanas Luisa, Juana Cruz y Ana Dominga Espósito Avilés y a su viuda María Guzmán Acosta, quienes no se pusieron de acuerdo en

la distribución de la póliza, sosteniendo la viuda que se trataba de un bien ganancial y por tanto que sólo su mitad era la que podía adjudicarse a los herederos, y las hermanas que era la totalidad la que debía distribuirse siguiendo la pauta marcada en la ley para los casos de sucesión intestada.

Llevado el caso a la corte, ésta dió primero la razón a las hermanas y luego, en reconsideración, a la viuda, y las hermanas apelaron para ante este tribunal.

■■ La cuestión envuelta no viene por primera vez ante este tribunal. En 1921 se resolvió el recurso interpuesto por la viuda de Quintiliano Cádiz que sostenía que una póliza que dejó su esposo constituída por éste a favor de sus hijos era un bien ganancial. Esta corte resolvió que no lo era, expresándose en el curso de la opinión así:

"Varias cuestiones se han suscitado por la parte apelante que carecen de importancia. La verdadera cuestión fundamental levantada es la de si los mil dólares de la póliza deben o no considerarse como bienes gananciales.

"Para sostener la afirmativa la parte apelante no cita ley ni jurisprudencia aplicables, limitándose a invocar la opinión del comentarista Manresa, que dice así:

" 'La cantidad satisfecha por una compañía aseguradora al fallecimiento del asegurado, ¿debe considerarse ganancial? Este caso ha sido en Francia objeto de discusión desde el punto de vista de si debe considerarse como un bien mueble. Es claro que muchos de los argumentos allí aducidos en pro o en contra, carecen en nuestra patria de razón de ser, por ser muy distinto el sistema legal que rige las relaciones matrimoniales entre los cónyuges.

" 'Desde luego, el capital del seguro sustituye a las primas que hay que pagar, y el derecho a aquél se adquiere desde el momento del contrato, pues desde él cabe la facultad de disponer, y si ocurre el fallecimiento puede exigirse el pago. Se trata, pues, de una adquisición a título oneroso hecha durante el matrimonio, aunque el plazo señalado para el cumplimiento de la obligación sea el de la muerte de uno de los cónyuges, hecho que extingue la sociedad. Así considerada la cuestión, puede decirse resuelta en los artículos 1396 y 1401; si las primas se pagan con el capital privativo del marido o de la mujer, el capital del seguro le pertenece privativamente; si se paga a costa del caudal común o no puede justificarse la proce-

dencia del dinero, la adquisición es ganancial.' 9 Manresa, Código Civil Español, 2da. edic., 589.

"Grande es el respeto que merece a esta corte la opinión del sabio civilista español, que es necesario reconocer además que es lógica en el punto concreto debatido, pero si se estudia a fondo la cuestión, se verá que está en pugna con los artículos 416 y 428 del Código de Comercio cuerpo legal que regula el seguro de vida, por tratarse de un contrato mercantil.

"Expresamente dice el segundo de los artículos citados que las cantidades que el asegurador deba entregar a la persona asegurada, en cumplimiento del contrato, serán propiedad de ésta, aún contra las reclamaciones de los herederos legítimos y acreedores de cualquier clase del que hubiere hecho el seguro a favor de aquélla." Cádiz v. Jiménez, 30 D.P.R. 34, 37.

Para sostener su opinión en contrario la Corte de Distrito aparte de sus razonamientos—muy bien expuestos en verdad—sólo cita la autoridad de Manresa, que esta Corte Suprema no obstante reconocer su peso se negó a seguir en el caso de Cádiz, supra.

En su alegato la parte apelada se limita a sostener que el caso de Cádiz, supra, se distingue del presente porque en él existía un beneficiario y en éste no existe, no siendo aquí aplicable el artículo 428 del Código de Comercio. Termina su razonamiento como sigue:

"En bien de la justicia, teniendo en cuenta que el artículo 428 del Código de Comercio, no expresa a quién debe pagarse una póliza en la que se omite el beneficiario; que la jurisprudencia universal es que en estos casos, si la póliza se pagó con bienes privativos es bien privativo y ganancial si fueren satisfechos los premios con dinero de la sociedad conyugal, debe resolverse que el producido de la póliza de Luis Espósito Avilés, es un *asset* del caudal de éste (38 L.R.A. N.S. 246), bien ganancial, si fué adquirido el derecho con bienes gananciales, como es la opinión del ilustre comentarista Manresa."

La cita que se hace de L.R.A. está equivocada. Al examinarla nos hemos encontrado con el caso de *Shannon* v. *Mc Nabb* de la Corte Suprema de Oklahoma, 29 Okla. 829, que versa sobre daños y perjuicios y que nada tiene que ver con el presente.

Si bien es cierto que este caso puede distinguirse del de Cádiz, supra, en el sentido de que en el de Cádiz se especificó que los beneficiarios eran los hijos, no creemos que pueda sostenerse que aquí no existen beneficiarios. Como ya dijimos al exponer los hechos, no habiéndolos designado específicamente la persona asegurada, debe entenderse que lo son sus herederos de acuerdo con el reglamento de la compañía. Y esta corte, aunque fijo su pensamiento en otra cuestión fundamental distinta—la interpretación de la enmienda a la Ley No. 35 de 1928 (p. 225) al artículo 249 inciso 9, del Código de Enjuiciamiento Civil—en el caso de *Schluter* v. *Sucesión Díaz*, 41 D.P.R. 884, 886, se expresó así:

"Al tiempo de la enmienda, el caso de una póliza pagadera a los herederos había sido plenamente cubierto por el artículo 428 del Código de Comercio. Véase Del Val v. Del Val, 29 Jurisprudencia Filipina 564."

Llevados por la cita, hemos estudiado el caso de Filipinas. En el curso de la opinión se dijo:

"Convenimos con la apreciación del Juez *a quo,* de que los productos de la póliza de seguros pertenecen exclusivamente al demandado en concepto de bienes propios e individuales. Es doctrina americana que los productos de una póliza de seguro pertenecen exclusivamente al beneficiario, y no a la testamentaría de la persona cuya vida estaba asegurada; que tales productos son propiedad individual y exclusiva del beneficiario y no de los herederos de la persona asegurada. Creemos que en estas Islas rige la misma doctrina en virtud del artículo 428 del Código de Comercio, que dice lo siguiente:

" 'Las cantidades que el asegurador debe entregar a la persona asegurada en cumplimiento del contrato, serán propiedad de ésta aun contra las reclamaciones de los herederos legítimos y acreedores de cualquiera clase del que hubiere hecho el seguro a favor de aquélla.'

"El abogado de los demandantes alega que el artículo que acabamos de citar está subordinado a lo que dispone el artículo 1035 del Código Civil. Este artículo dice:

" 'El heredero forzoso que concurra, con otros que también lo sean, a una sucesión, deberá traer a la masa hereditaria los bienes

o valores que hubiese recibido del causante de la herencia, en vida de éste, por dote, donación u otro título lucrativo, para computarlo en la regulación de las legítimas y en la cuenta de partición.'

"Dicho abogado pretende también que el importe de la póliza de seguro constituía una donación o presente que el padre defirió en vida al demandado y que, como tal, su destino definitivo queda determinado por las disposiciones del Código Civil, relativas a donaciones, especialmente por el artículo 819. Este artículo dispone que 'las donaciones hechas a los hijos, que no tengan el concepto de mejoras, se imputarán en su legítima.'

"No podemos convenir con estas pretensiones. El contrato de seguro de vida es un concepto especial, y el destino que debe darse a su importe está determinado por leyes especiales que tratan exclusivamente de esta materia. El Código Civil no contiene disposición alguna que se refiera específica y directamente al contrato de seguro de vida, o al destino que deba darse al importe del seguro de vida. Esta materia está regulada exclusivamente por el Código de Comercio, que establece las condiciones del contrato, las relaciones de las partes y el destino que debe darse al producto de la póliza." *Del Val* contra *Del Val*, 29 Jurisprudencia Filipina 564, 571.

Romero y Girón en la página 304 de su Código de Comercio, refiriéndose al seguro de vida, entre otras cosas dice:

"Este importantísimo contrato trae su origen del antiguo censo vitalicio, notablemente desarrollado en los tiempos modernos, merced a las variadas, ingeniosas y fecundas combinaciones debidas a la influencia simultánea del espíritu de previsión y del afán de lucro. . .

". . . cualesquiera que sean los fines que se propongan los contratantes y las combinaciones que puedan estipular, siempre deben concurrir cuatro elementos o requisitos esenciales para la validez del contrato, a saber: existencia de una persona, cuya vida sirva de base para el seguro; valor previamente fijado de esta vida; persona beneficiada y entrega de un premio o capital, como precio del seguro.

"Partiendo el proyecto de estos principios fundamentales, declara válidas todas las combinaciones que puedan hacerse, pactando entregas de premios o entregas de capital a cambio de disfrute de una renta vitalicia, percibo de capitales al fallecimiento de persona determinada a favor del asegurado, de sus herederos o de un tercero, y cualquiera otra combinación análoga o semejante, por una o más vidas, sin exclusión de edad, sexo o estado de salud. . . . . . . .

"Ofrece este contrato además la singularidad de que suele constituirse el seguro a favor de una tercera persona, aun sin obtenerse su consentimiento; lo cual es perfectamente lícito, porque de esta forma pueden las personas dotadas de nobles sentimientos ejercer verdaderos actos de caridad en favor de familias modestas, pero honradas y laboriosas, sin lastimar en lo más mínimo la susceptibilidad o pundonor de ninguno de sus individuos, dotándolas de un capital o renta para cuando deje de existir el que, con su trabajo, atiende a la subsistencia de todos."

■■■ De todo cuanto hemos podido examinar en relación con el contrato de seguro de vida, se deduce que fué regulado y se rige exclusivamente por el Código de Comercio, debiendo darse validez a sus cláusulas tales como constan de la póliza en que se extiende. Siempre existe en él un beneficiario y es el beneficiario el llamado a disfrutar exclusivamente de la cantidad por la cual aseguró su vida a su favor la persona que constituyó la póliza, sin detenerse a considerar el origen del dinero con que se pagaron las primas. Si en este caso Avilés hubiera constituído la póliza únicamente a favor de su viuda ¿hubieran podido sus hermanas reclamar algo? Claro es que no. Todo hubiera correspondido a la viuda. De igual modo si la hubiera constituído a favor de una sola de las hermanas, a ella sola hubiera correspondido el seguro, sin que pudieran reclamar participación alguna la viuda ni sus otras hermanas. Y es que la verdadera regla aplicable consiste en que el producto de la póliza no pertenece a la testamentaría del finado sino al beneficiario.

■ Claro es que cuando los herederos son los beneficiarios el producto se distribuye entre ellos de acuerdo con la ley, pero en tal caso debe procederse exactamente igual que en los otros, y si en los otros no tiene el producto la condición de ganancial aunque la persona asegurada sea casada, tampoco puede tenerlo cuando se trata de los herederos.

La solución parece estar en pugna con el propósito fundamental en que se inspira la sociedad de gananciales, a saber: la división por igual entre los cónyuges de todos los bienes adquiridos a título oneroso durante el matrimonio, ya

que si las primas de la póliza se satisfacen con bienes de la sociedad de gananciales, el producto de la póliza en su día ganancial debiera ser también. Pero ello no fué estatuído por el legislador que autorizó la celebración de un contrato especial sin trabas de ninguna especie—a menos, desde luego, que se demostrara un propósito fraudulento contrario a los fines de la propia ley.

Además, si se ahonda un poco en la naturaleza humana se verá que es imposible garantizar una división exactamente igual desde un principio y que hay menos riesgo en lo que pueda ocurrir en contra de la división por igual de las ganancias de la sociedad conyugal con motivo del sostenimiento de pólizas de seguro de vida por cualquiera de los cónyuges, de lo que constantemente ocurre con motivo de los gastos privados de cada uno de ellos. ¡Cuántas veces se observa el caso de una esposa que vive modestamente en el seno del hogar mientras el marido gasta grandes sumas en una vida desordenada o viciosa, y cuántas otras el de un marido dedicado exclusivamente al trabajo mientras su mujer dilapida una fortuna en trajes, autos o saraos! Seguramente que las cantidades que uno y otra en tales casos gastan serán superiorísimas a las que puedan invertir en seguros de vida. La diferencia consistiría en que de las sumas gastadas en el desorden o en el vicio nada queda y de las invertidas en el seguro queda a la muerte del asegurado el producto de la póliza.

La verdad es que todas las circunstancias consideradas, se concluye que no existe injusticia, al contrario, que la propia sociedad ganancial se beneficia porque la toma de seguros contribuye a formar el hábito del ahorro y a desarrollar el sentimiento de responsabilidad para con las personas con quienes se está ligado por los lazos de la sangre o del afecto, que tan beneficiosos son para el bienestar y la seguridad de las familias.

Aunque no sea del todo aplicable ya que no fué establecida tomando en consideración la sociedad de gananciales, citaremos, por vía de ilustración, jurisprudencia de las cortes

americanas establecida en casos de pólizas pagaderas "a los herederos" de la persona asegurada.

De la nota que aparece al pie del caso de *Hubbard, Price & Co.* v. *Turner et al.*, de Georgia, en 30 L.R.A. 593, transcribimos a ese efecto lo que sigue:

"La decisión arriba transcrita en el caso de Hubbard, P. & Co. v. Turner está plenamente sostenida por fallos anteriores sobre la misma materia.

"La persona que de acuerdo con los estatutos pueda tomar bienes muebles intestados, tiene derecho al producto de una póliza de seguros pagadera a los 'herederos legales' del asegurado, y ese producto no irá a la herencia o sucesión. Mullen v. Reed, 64 Conn. 240, 24 L.R.A. 664.

"La palabra 'herederos' refiriéndose a aquellas personas a quienes se pagará el seguro en caso de no haber testamento, significa, a tenor de lo resuelto en Northwestern Masonic Aid Asso. v. Jones, 154 Pac. 99, los herederos legales designados por el estatuto sobre partición, y excluye el albacea y los acreedores de la herencia.

"La palabra 'herederos' que aparece en un certificado de seguro de vida, cuando no hay contexto que la explique, quiere decir aquéllos que de conformidad con los estatutos de partición tendrían derecho a heredar los bienes muebles del asegurado. Johnson v. Knights of Honor, 53 Ark. 255, 8 L.R.A. 732.

"La frase 'herederos legales' tal como se usa en el reglamento de una sociedad benéfica, que describe la persona a quien se le hará el pago si el miembro no ha hecho disposición al efecto, significa los parientes más cercanos, o quizá en un sentido más amplio incluye los dependientes así como los deudos. Por consiguiente, en un caso en que un miembro no dejó ni viuda ni hijos, su madre que dependía de él para sostenerse, fué declarada con derecho al fondo. Britton v. Supreme Council of R. A., 46 N. J. Eq. 102.

"Se ha resuelto que la palabra 'herederos,' que describe los beneficiarios de una póliza de seguro de vida, significa las personas con derecho al sobrante de los bienes muebles de acuerdo con la ley de partición, quienes en este caso eran la viuda y los hijos, y que tenían derecho al seguro en la proporción indicada por el estatuto. Leavitt v. Dunn, 56 N.J.L. 309.

"La palabra 'herederos' usada en la constitución de una sociedad benéfica, que hace mención de las 'viudas, huérfanos y herederos o legatarios' como las personas que deberán recibir el beneficio, no

se usa en su sentido estricto sino que incluye cualquier persona a quien pudiera adjudicarse la herencia del finado por ministerio de la ley. Lamont v. Grand Lodge Iowa L. of H., 31 Fed. Rep. 177. . . .

"Si bien hay alguna diversidad en las decisiones, casi todos los casos sostienen que la palabra 'herederos' al referirse a la persona a quien deba pagarse el seguro de vida, incluye la viuda del asegurado.

"Una viuda está comprendida entre los 'herederos legales' dentro del significado de un certificado de seguro pagadero a los herederos legales del miembro, en aquellos casos en que de conformidad con las leyes del estado ella tendría derecho a una parte de la herencia Mullen v. Reed, 64 Conn. 240, 24 L.R.A. 664.

"Se ha resuelto que un certificado pagadero a los herederos del asegurado incluye a la viuda como uno de los herederos, cuando los estatutos la declaran heredera de los bienes muebles. Lyons v. Yerex, 100 Mich. 214."

Véase también 3 L.R.A. (N. S.) 904 y 14 R.C.L. 1373.

De acuerdo con la ley vigente en Puerto Rico son herederos en este caso la viuda y las hermanas de Espósito Avilés correspondiendo a la viuda la mitad del producto de la póliza en usufructo, debiendo la otra mitad dividirse por partes iguales entre las hermanas. Sección 11 de la ley para modificar y derogar los artículos 795, . . . del Código Civil aprobada en 1905, Comp. 1911, p. 721.

*Debe revocarse la resolución apelada y devolverse el caso a la corte de distrito de su origen para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Señor Wolf está conforme con el resultado.