ATLANTIC SOUTHERN INSURANCE COMPANY, demandante y apelante, *v.* PABLO LÓPEZ CASTRO, demandado y apelado.

*Número:* 12755     *Resuelto:* 21 de septiembre de 1962

*Gutiérrez, Sánchez & Ramírez y Juan E. Serrallés III,* abogados de la apelante; *J. B. Fernández Badillo, Procurador General y Nilita Vientós Gastón, Procurador General Auxiliar,* abogados del apelado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

La Atlantic Southern Insurance Company, corporación doméstica de seguros, apeló la sentencia del Tribunal Superior, Sala de San Juan, por la cual se confirmó una resolución del Comisionado de Seguros de Puerto Rico, de fecha 13 de mayo de 1958, que suspendió, por el término de quince días, a la apelante, su certificado de autorización para contratar seguros.

Es necesaria una exposición de los hechos revelados por los autos del recurso y de mayor significación a los fines de la presente opinión. En 9 de octubre de 1952 Luis Cortés Díaz solicitó de la apelante, la Atlantic Southern Insurance Co., of Puerto Rico, la expedición de una póliza de vida de $500.00, con cláusula de doble indemnización en caso de muerte accidental. La póliza—del tipo de seguro industrial que no requiere examen médico, aunque sí la representación del asegurado de que se halla en buena salud—fue expedida el día 15 del mismo mes, designándose en ella a Estebanía Díaz, madre del asegurado, como beneficiaria.

La póliza continuó en vigor hasta el 19 de noviembre de 1956, fecha en que caducó por haber dejado el asegurado de pagar las primas. El 11 de enero de 1957, el asegurado solicitó la rehabilitación del contrato pagando el montante de las primas en descubierto. En esa misma fecha, el agente de la aseguradora apelante aceptó el pago de las primas dándole un recibo al asegurado en el cual se acreditaba el pago y se consignaba que "éste no será considerado bajo nin-

guna circunstancia como un pago en la póliza o rehabilitación solicitada hasta tanto dicha solicitud sea aprobada por la compañía y un crédito por el mencionado depósito ha [sic] sido actualmente entrado en el libro de recibos por un representante de la compañía debidamente autorizado . . . La compañía no incurre en obligación alguna por razón de este depósito a menos que el solicitante tenga vida y que su salud sea buena a la fecha de la rehabilitación."

El 20 de enero de 1957, el asegurado fue atropellado por un automóvil, falleciendo al día siguiente a consecuencia de las lesiones recibidas en dicho accidente. El 21 de enero de 1957, o sea, el día siguiente al accidente, la compañía aseguradora aprobó la solicitud de rehabilitación.

Días más tarde, la beneficiaria Estebanía Díaz, en unión de varios amigos, acudió a las oficinas de la aseguradora cuyo agente o empleado le pidió la póliza pidiéndole, además, que consiguiera un certificado de defunción del asegurado.

El 6 de febrero de 1957, la aseguradora se dirigió por carta a la beneficiaria informándole que se denegaba el pago de la póliza por no haber estado el asegurado en buena salud a la fecha de la rehabilitación. A esa carta adjuntó la aseguradora un cheque por el montante de las primas vencidas pagadas por el asegurado para obtener la rehabilitación solicitada.

Por no estar de acuerdo, la beneficiaria Estebanía Díaz, devolvió el cheque recibido y solicitó de la aseguradora la devolución de la póliza. La compañía aseguradora se negó a devolver la póliza *por entender que ésta pertenecía a la compañía.*

El 7 de mayo de 1957 la beneficiaria radicó una demanda en cobro de la póliza, alegando que ésta era de $1,000 y que en virtud del pacto de doble indemnización le correspondían $2,000.([1])

---

[1] Así quedó la demanda hasta el 21 de mayo de 1957, cuando se enmendó para rebajar la suma reclamada a $1,000.

El 6 de junio de 1957, la aseguradora accedió a pagar la póliza, mas solicitó de la beneficiaria que suscribiera un documento acreditando que "he desistido de usar los servicios del Lcdo. Belén Trujillo y que ni él ni cualquier otro abogado intervendrá en mis intereses sobre esta póliza." El 11 de junio de 1957 fue·finalmente pagada la póliza a la beneficiaria quien fue acompañada de su abogado a petición de la compañía aseguradora. La demanda ante el tribunal fue desistida por estipulación.

Antes de que se pagara la póliza, y por consejo de su abogado, la beneficiaria había acudido a la oficina del Superintendente de Seguros en relación con su controversia con la compañía aseguradora. La queja de la beneficiaria produjo una investigación y la intervención del señor José H. Cora, empleado de la Oficina del Superintendente de Seguros, quien se comunicó con el presidente de la compañía aseguradora manifestándole éste a aquél que "ellos no habían pagado este caso porque la señora había contratado los servicios de un abogado y a ellos no les gustaba bregar con abogados."

En alguna fecha antes de octubre de 1957 (²) la compañía aseguradora se querelló al Comisionado de Seguros de manifestaciones hechas por el empleado de esa oficina, señor José H. Cora, a personas relacionadas con la compañía de que ésta "no atendía las reclamaciones como debía." Esta queja de la apelante produjo una investigación a cargo del señor Víctor A. Quiñones, empleado de la Oficina del Superintendente de Seguros. En 9 de octubre de 1957, Estebanía Díaz radicó una declaración jurada ante el Comisionado en la cual relató algunos de los hechos en relación con su reclamación como beneficiaria, de la póliza de seguro de vida tipo industrial a la que se refieren los hechos ya mencionados. (³)

---

(²) La apelante aparentemente no puede facilitarnos la fecha en que se querelló ante el Comisionado de Seguros.

(³) La apelante insinúa que la acción administrativa fue ocasionada por su querella de las actuaciones del funcionario señor Cora.

Ambas querellas fueron atendidas por el Superintendente de Seguros quien ordenó una investigación. Como resultado de esta investigación se rindió un informe (Exhibit 6 Dte.) del cual se desprendía que la compañía aseguradora "rehusó indebidamente y demoró innecesariamente el pago" de los beneficios provenientes de la póliza WE-100000.

A consecuencias de todo esto, el Superintendente de Seguros ordenó la celebración de una vista el 14 de marzo de 1958.

Como resultado de la vista, el Superintendente resolvió que:

a) El asegurado estaba cubierto al momento del accidente.

b) La compañía aseguradora denegó ilegalmente el pago de la reclamación héchale por la querellante.

c) Al comunicar el agente general Luhn al señor Cora que la compañía no había pagado a la querellante por haber ésta contratado los servicios de un abogado; al hacer la compañía firmar a la querellante un documento en el cual desistía de usar los servicios del Lic. Belén Trujillo comprometiéndose a no usar los servicios de otro abogado y al no devolver los documentos pertenecientes a la querellante, la compañía aseguradora Atlantic Southern Insurance Co. of Puerto Rico actuó de manera incompetente en violación a la Ley de Seguros de 1921, 26 L.P.R.A. sec. 70(6).

En mérito de sus conclusiones de derecho, el Superintendente de Seguros suspendió el Certificado de Autorización conferido a la compañía aseguradora por el término de quince días más veinticinco dólares por concepto de la preparación del récord de la vista celebrada.

De la anterior resolución apeló la Atlantic Southern Insurance Co. of Puerto Rico ante el Tribunal Superior de Puerto Rico, Sala de San Juan, el cual, como expusimos, confirmó la resolución del Comisionado de Seguros.

La apelante señala en su alegato la comisión de dos errores. Por el primero alega que el Tribunal Superior erró al

determinar que era suficiente el Aviso de Vista que inició el procedimiento administrativo, y, por el segundo, al determinar que la orden dictada por el Comisionado tuviera apoyo en la prueba ofrecida en la vista administrativa.

A juicio nuestro, ninguno de esos errores fue cometido. Veamos.

## I

Sostiene en primer término la apelante en cuanto al primer error que el Aviso de Vista era insuficiente, para permitirle al Superintendente dictar la orden apelada, ya que, de los cargos que se concretan en dicho documento—haber rehusado indebidamente el pago de la póliza y haber demorado innecesariamente dicho pago—no puede tomarse seriamente el primero porque resulta claro que la póliza fue pagada en 11 de junio de 1957, mucho antes de la querella; y la suspensión decretada por el Superintendente no pudo ser motivada por la demora imputada en el segundo, porque no hay determinación de hecho alguna por parte del Comisionado al efecto de que la querellada incurrió en demora censurable en el pago de la póliza.

Expone también que la determinación del Comisionado y su condena se basaron en que:

1. El agente general de la apelante comunicó a un funcionario de la Oficina del Superintendente de Seguros que la Atlantic "no había pagado a la querellante por haber ésta contratado los servicios de un abogado";

2. La Atlantic hizo firmar un documento a la querellante desistiendo de usar los servicios de su abogado y comprometiéndose a no utilizar otro; y

3. La apelante se había negado a devolver a su reclamante los documentos de la póliza después de negarle originalmente la reclamación del seguro;

4. La denegación ilegal del pago de la póliza (aunque se pagó antes de la iniciación de la querella).

Argumenta, además, que aun asumiendo por el momento que hubo base en el récord administrativo para justificar las determinaciones de hecho, es palpable que la apelante fue hallada incursa en irregularidades distintas de las que le fueron imputadas en la querella; que esto es así ya que la querella lo único que imputaba era la demora innecesaria en el pago; que no se justifica una pena tan severa a base de irregularidades halladas probadas que la querellada no venía preparada para refutar y de las cuales no estaba siquiera advertida; que el juez a quo resolvió este planteamiento determinando que no era preciso fallar sobre la suficiencia del aviso de vista sino que era suficiente que la querellada compareció a la vista representada por dos abogados competentes sin que éstos solicitaran antes una especificación de particulares ni objetaran por sorpresiva la evidencia en que el Comisionado basó su conclusión; que esta última indicación del juez a quo es poco menos que peregrina ya que no había especificación de particulares alguna que solicitar respecto a una querella que clara e inequívocamente imputaba demora innecesaria únicamente; que no objetó a la evidencia en cual basó el Comisionado su conclusión *porque tal evidencia no era susceptible de objetarse con éxito ya que era admisible para intentar probar la demora innecesaria que le estaba siendo imputada a la apelante;* que la cita del juez a quo del tratado de Davis, *Administrative Law*, Sec. 80 (1951), págs. 278–280, es impertinente a la cuestión envuelta en este caso ya que trata sobre el punto que hoy no se discute en cuanto a que las alegaciones en un procedimiento administrativo no tienen que contener la particularización de hechos que generalmente se requiere en las alegaciones en un procedimiento judicial y que toda la jurisprudencia citada en la sección supra, lo que resuelve es que una querella vaga, muchas veces fraseada en términos generales del lenguaje de un estatuto, sin particularización de hechos, es suficiente para sostener determinaciones de hecho concretas si el querellado estaba real y efectivamente informado de los

hechos y tuvo oportunidad de entendérselas con ellos.(⁴) Cita en apoyo de su contención en cuanto a que la apelante tiene derecho a que se le informe con antelación los cargos imputados, los siguientes casos: *National Labor Relations Board* v. *Kanmack Mills, Inc.*, 220 F.2d 542; *N.L.R.B.* v. *Bradley Wash Foundation Co.*, 192 F.2d 144; cf. *N.L.R.B.* v. *Sands Manufacturing Co.*, 306 U.S. 332; *Consolidated Edison* v. *N.L.R.B.*, 305 U.S. 197. ▉

En cuanto a la suficiencia de las alegaciones en procedimientos administrativos, dice Davis, *Administrative Law Treatise*, Vol. 1, pág. 525, Sec. 8.04 (1958):

"Lo esencial de las alegaciones en los procedimientos administrativos es concederle a la parte contraria una oportunidad para prepararse. Una alegación es una de las varias maneras para conceder dicha oportunidad. Las deficiencias en una alegación pueden ser subsanadas por medio de una comunicación informal o una enmienda formal, por una solicitud de particulares y por conferencias con antelación a las vistas o mociones a los efectos de que se concedan prórrogas. En revisión *la cuestión a considerar no es la suficiencia de la notificación de vista original sino las oportunidades que tuvieron las partes a ser oídas.*" (Énfasis nuestro.)

y sigue en la página 526:

"En muchos casos la falta de levantar una objeción oportuna o de pedir una solicitud de particulares es fundamento suficiente para negar la revocación de una resolución administrativa. *El no solicitar una prórroga muy bien puede constituir una renuncia a la alegación de una notificación de vista defectuosa.*" (Énfasis nuestro.)

y añade a la página 530 del mismo volumen, Sec. 8.05:

"Aunque como hemos visto en la sección anterior *lo esencial en las alegaciones en los procedimientos administrativos es ofre-*

---

(⁴) Según la apelante, aplicando esta norma al caso de autos, la querella hubiese sido suficiente si meramente hubiese imputado a la apelante "haber incurrido en incompetencia en la tramitación de la reclamación de Estebanía Díaz en cobro de la póliza que aseguraba la vida de Luis Cortés Díaz." O sea, el lenguaje de 26 L.P.R.A. sec. 70(6).

*cerle a la parte contraria una oportunidad adecuada para prepararse* y aunque lo inadecuado de una notificación de vista es usualmente subsanado de alguna de las maneras ya mencionadas, la controversia en algunos casos gira alrededor de la suficiencia de una notificación de vista." (Énfasis nuestro.)

En el caso de autos se le envió a la querellada, con fecha 28 de febrero de 1958, un Aviso de Vista cuyo segundo Por Cuanto lee como sigue:

"POR CUANTO, de la investigación practicada por esta oficina se desprende que la querellada, Atlantic Southern Insurance Co., *rehusó indebidamente y demoró innecesariamente el pago de los beneficios provenientes del seguro ya mencionado."* (Énfasis nuestro.) ■

En dicho Aviso de Vista se fijaba la fecha para la celebración de la misma en 14 de marzo de 1958, todo lo cual le daba 14 días a la querellada para hacer todas las averiguaciones necesarias o pedir especificación de particulares, prórrogas o cualquier otra medida de las que enumera Davis en su ya citado tratado. La querellada asistió a la vista representada por sus dos abogados Lics. Elí B. Arroyo y Celestino Morales, Jr.; en ningún momento solicitaron suspensión de la vista; que contrainterrogaron con toda libertad a los testigos de la querellante; que no presentaron prueba alguna y no objetaron a la presentada. Los ahora abogados de la querellada admiten que no se objetó a la evidencia presentada por la allí querellante "por la sencilla razón de que tal evidencia no era susceptible de objetarse con éxito, ya que era admisible para intentar probar la demora innecesaria que le estaba siendo imputada a la apelante." ■

Esta vista se celebró el 14 de marzo de 1958 y no concluyó hasta el 19 de marzo del mismo año. Cualquier imperfección o cualquier vaguedad que existiere en el Aviso de Vista quedó subsanado al enterarse la querellada de los cargos que se le hacían desde el primer día.

De una lectura del Aviso de Vista se desprende que se le imputan a la querellada dos cargos, a saber:

A. Rehusar indebidamente el pago de los beneficios de la póliza, y

B. Demorar innecesariamente el pago de los beneficios de dicha póliza.

Aunque no se hizo determinación de hecho alguna al efecto de que la querellada incurrió en demora censurable en el pago de la póliza, sí se hicieron, entre otras, las siguientes determinaciones:

1. Que el 21 de enero de 1957 la querellada reinstaló la póliza WE–100000;

2. Que el asegurado murió el 21 de enero de 1957;

3. Que la beneficiaria se dirigió a la aseguradora para recibir los beneficios de la póliza;

4. Que la querellada, más tarde, le devolvió a la beneficiaria el importe de la prima pagada para la rehabilitación de la póliza WE–100000;

5. Que la querellante requirió la devolución de la póliza y esto le fue negado por la querellada;

6. Que la querellante compareció a la Oficina del Comisionado de Seguros y se entrevistó con el señor José H. Cora;

7. Que el señor José H. Cora llamó al señor Luhn, agente general de la querellada;

8. Que el agente general de la querellada, señor Luhn, le comunicó al señor Cora que ellos no habían pagado este caso porque la señora había contratado los servicios de un abogado;

9. Que en 6 de junio de 1957 la querellante firmó en la oficina de la querellada un documento por el cual desistía de usar los servicios de su abogado particular y prometiendo no contratar otro;

10. Que en 11 de junio de 1957 la querellante desistió de su demanda ante el Tribunal de Distrito, y que en esa misma fecha la querellada pagó a la querellante la suma de 500 dólares y 500 adicionales como compensación por muerte accidental.

De todas estas determinaciones de hechos, ampliamente sostenidas por la prueba, se puede inferir que la compañía aseguradora negó el pago de la póliza WE–100000 sin justificación alguna, siendo éste uno de los cargos que se le formularon y del cual tuvo el suficiente aviso por su inclusión en el segundo Por Cuanto del Aviso de Vista.

Los casos citados por la apelante no son de aplicación al de autos por ser la situación de hechos completamente diferente.

En el de *N.L.R.B.* v. *Kanmark Mills, Inc.*, 200 F.2d 542, (3d Cir. 1952) se le imputaba a un patrono el despedir a una empleada por razón de haber ésta participado en actividades sindicales. En el curso de la vista, el administrador general de la querellada declaró que él le había ofrecido restaurar a la empleada querellante en su empleo si retiraba la querella radicada ante la Junta. La Junta determinó que no había nada en el récord que justificara la determinación de que el despido se debía a las actividades sindicales de la empleada pero que del récord surgía que el despido se debía a la querella radicada por la empleada, lo cual, a su vez, establecía una práctica desleal.

El Tribunal de Apelaciones para el Tercer Circuito revocó a la Junta opinando que no se le había dado oportunidad a la querellada a contestar este nuevo cargo.

De los casos citados el único que puede tener aplicación al de autos es *Consolidated Edison Co.* v. *N.L.R.B.*, 305 U.S. 197, en el cual una de las cuestiones discutidas es la suficiencia de la evidencia para sostener las conclusiones de la Junta. Dijo el Tribunal:

"Las compañías alegan que el Tribunal de Apelaciones se excedió en sus poderes para revisar las determinaciones y en vez de escudriñar el récord para ver si las determinaciones estaban sostenidas por evidencia 'sustancial' meramente consideró si el récord estaba 'totalmente' desprovisto de evidencia que las sustanciaran. Estamos de acuerdo que el estatuto en tanto en cuanto provee que 'las determinaciones de la Junta sobre los

hechos si sostenidas por evidencia sustancial serán concluyentes' quiere decir sostenidas por evidencia sustancial. (Casos.) *Quiere decir aquella evidencia tan relevante que una mente razonable acepte como adecuada para sostener la conclusión."* (Énfasis suplido.)

Las determinaciones hechas por el Comisionado y ratificadas por el tribunal a quo están ampliamente sostenidas por la prueba en todos sus extremos.(5)

## II

Respecto al segundo error que versa sobre la falta de apoyo en la prueba para sostener la orden del Comisionado, la apelante divide su discusión en tres partes:

a) la retención de la póliza; b) interpretación del Tribunal al documento de renuncia a representación legal y, c) crédito dádole a las declaraciones del señor José H. Cora.

a) *La retención de la póliza.*

Dice la apelante que si asumimos que la póliza no era exigible y que esto era plausible, es perfectamente lógico que ella infiriera o diera por sentado que la póliza le pertenecía. ■

No vemos cómo pueda asistir alguna razón a la apelante en cuanto a este extremo. Las pólizas de seguro pertenecen al asegurado y una vez muerto éste pasan a ser propiedad del beneficiario. Cf. *Espósito* v. *Guzmán,* 45 D.P.R. 796; *González* v. *De la Guerra,* 46 D.P.R. 264, 277.

La póliza de seguro es el documento que mejor prueba el derecho del asegurado o del beneficiario a la reclamación del seguro. En este caso en particular, la beneficiaria no pudo explicar a su abogado las condiciones del contrato ni la cantidad del seguro por no tener la póliza en su poder. El abogado se vio obligado a radicar una demanda que luego

---

(5) La apelante admite que no hay excusa para justificar la indebida retención de la póliza ni para imponer como condición a la beneficiaria la renuncia a representación legal (contrario a 26 L.P.R.A. sec. 1074 o sea Ley Núm. 66 de julio 16 de 1921, sec. 175). La misma apelante pone en tela de juicio su poder o habilidad para ofrecer "prueba creíble y convincente." (Pág. 12, memorándum apelante.)

tuvo que ser enmendada por no haberle podido facilitar la beneficiaria la póliza que retuvo indebidamente la compañía.

b) *Interpretación del Tribunal al documento de renuncia a la representación legal.*

El Comisionado determinó que la apelante había incurrido en incompetencia "al hacer . . . que la querellante firmara un documento en el cual desistía de usar los servicios del Lic. Belén Trujillo, comprometiéndose a no usar otro abogado en su reclamación."

Es la propia apelante la que afirma *que dicha conclusión del Comisionado sobre el particular está sostenida por la prueba;*([6]) que el documento fue presentado en evidencia y su legitimidad no fue impugnada por ella.

c) *Crédito dádole a las declaraciones del señor José H. Cora.*

Argumenta la apelante que el Comisionado halló probado que la apelante incurrió en incompetencia "al comunicar el agente general Luhn al señor Cora que la compañía no había pagado a la querellante por haber ésta contratado los servicios de un abogado," y que esa aseveración no se encuentra en el testimonio de ninguno de los testigos que declararon en la vista, sino en el informe de Víctor Quiñones (Exhibit 6) y que aunque es cierto que el informe en cuestión fue admitido en evidencia sin objeción por parte de la apelante, la evidencia en cuestión no ha debido recibir crédito del Comisionado. ■

Alega, ahora en apelación, que se trata de un patente "double hearsay" ya que fue José H. Cora quien le hizo esa manifestación al señor Víctor Quiñones; que el señor Cora estaba bajo investigación; que le convenía al señor Cora "afear" la conducta de la aseguradora para así poder justificar la conducta de él.

El señalamiento es frívolo. Todas las determinaciones del juez sentenciador están ampliamente sostenidas por la prueba.

([6]) Véase pág. 13, alegato de la apelante.

En cuanto a la alegación de que no se le debió dar crédito a las manifestaciones del señor José H. Cora por ser un patente "double hearsay", la apelante en ningún momento objetó a que se presentara esta evidencia. Repetidamente ha dicho este Tribunal que las objeciones que procedan contra la admisión de prueba deben presentarse en la corte sentenciadora y no por primera vez en apelación. *Clabaquera* v. *Espéndez*, 61 D.P.R. 689; *Pueblo* v. *García*, 48 D.P.R. 444. *Debe confirmarse la sentencia apelada.*