EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Julia Vélez Rivera y otras <br>     Recurridas <br><br>        v. <br><br> Bristol-Myers Squibb, P.R., <br> Benefits Express, Secretario <br> de Justicia y Departamento de <br> Hacienda <br>     Peticionarios | Certiorari <br><br> 2002 TSPR 123 <br><br> 157 DPR \_\_\_\_ |

Número del Caso: CC-2002-233


Fecha: 17/septiembre/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional IV


Juez Ponente:
                    Hon. Roberto L. Córdova Arone


Oficina del Procurador General:
                    Lcdo. Héctor Clemente Delgado
                    Procurador General Auxiliar


Abogado de la Parte Recurrida:
                    Lcdo. Agustín Silva Montalvo


Materia: Sentencia Declaratoria y Solicitud de Orden al Amparo
        de la Regla 59 de Procedimiento Civil

Este documento constituye un documento oficial del Tribunal Supremo
que está sujeto a los cambios y correcciones del proceso de
compilación y publicación oficial de las decisiones del Tribunal.
Su distribución electrónica se hace como un servicio público a la
comunidad.

CC-2002-233

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Julia Vélez Rivera y otras

    Recurridas

       v.

                               CC-2002-233

Bristol-Myers Squibb, P.R.,
Benefits Express,
Secretario de Justicia y
Departamento de Hacienda

    Peticionarios

Opinión del Tribunal emitida por la Juez Asociada señora Naveira de Rodón.

San Juan, Puerto Rico a 17 de septiembre de 2002

    **Nos corresponde resolver si el Estado --frente al beneficiario de una póliza de seguros de vida-- constituye un acreedor preferente a los fines de cobrar una deuda contributiva que el asegurado, al momento de su fallecimiento, tenía pendiente con el Departamento de Hacienda.**

**I**

    **El Sr. David Malavé Vélez (causante o asegurado) falleció el 19 de febrero de 1998.  A los pocos**

días, su señora madre, doña Julia Vélez Rivera (en adelante doña Julia) y sus hermanas, las Sras. Julia Malavé Rivera y Cruz Malavé Vélez, iniciaron los trámites para el cobro de ciertos beneficios los cuales fueron acumulados a favor de éstas mientras su causante era empleado de la empresa Bristol-Myers Squibb, P.R. (Bristol). Doña Julia fue designada única beneficiaria de un seguro de vida grupal que su hijo, el causante, poseía como empleado de la compañía.

El Departamento de Hacienda embargó los fondos en poder de Bristol ya que el causante tenía una deuda contributiva, la cual, al 1 de enero de 1997, ascendía a $90,552.36. Conforme a la póliza de vida de grupo o colectivo del causante la cantidad de dinero disponible para la beneficiaria primaria, doña Julia, era de aproximadamente $142,000.

Inconformes con la determinación de Hacienda, doña Julia y sus dos hijas acudieron el Tribunal de Primera Instancia. Dicho tribunal, dictó sentencia declaratoria decretando el derecho de doña Julia sobre todas las partidas de dinero en poder de Bristol, en concepto del programa de seguro de vida grupal. Determinó, además, que la beneficiaria tenía derecho, tanto al principal, como a los intereses acumulados desde la fecha del fallecimiento del asegurado y hasta la fecha de su pago. Por consiguiente, ordenó a Bristol entregar el dinero a la beneficiaria.[1]

Inconformes Bristol, Benefit Express, el Secretario de Justicia y el Departamento de Hacienda acudieron al Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). Dicho Tribunal confirmó el dictamen apelado.

---

[1] Dicho foro también determinó que el Departamento de Hacienda fue temerario por lo que lo condenó a pagar las costas, gastos y una suma de $1,000.00 de honorarios de abogado. La sentencia fue enmendada

El Procurador General entonces, en representación del Estado (Secretario de Justicia y el Departamento de Hacienda), acudió ante nos señalando como único error el siguiente:

ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES AL IMPEDIR QUE EL ESTADO, COMO ACREEDOR PREFERENTE, PUEDA EMBARGAR PARA FINES DEL COBRO DE UNA DEUDA CONTRIBUTIVA EL MONTO DE UNA PÓLIZA DE SEGURO DE VIDA QUE UN DEUDOR CONTRIBUTIVO MANTENÍA A NOMBRE DE CIERTOS FAMILIARES.

Mediante Resolución de 18 de abril de 2002, expedimos el auto y le concedimos a las partes término para que comparecieran. Con el beneficio de sus argumentos resolvemos sin ulterior trámite.

II

En nuestro ordenamiento jurídico, el Código de Seguros de Puerto Rico (en adelante Código de Seguros)[2], constituye el conjunto de <u>normas especiales</u> que reglamentan la materia de seguros. Al tratarse de una ley especial, hemos enfatizado que, sólo en situaciones jurídicas no contempladas por sus específicas disposiciones, se acudirá a otras fuentes legales supletorias como lo es, por ejemplo, nuestro Código Civil. Véanse <u>Mun. de San Juan</u> v. <u>Great Ame. Ins. Co.</u>, 117 D.P.R. 632, 635 (1986) y <u>Serrano Rámirez</u> v. <u>Clínica Perea, Inc.</u>, 108 D.P.R. 477, 481-482 (1979). Véase, además, Op. Sec. Just. Núm. 2 de 1963. El contrato de seguro de vida (conocido comúnmente como póliza) es uno de los reglamentados por dichas normas especiales. En esencia es un acuerdo sobre "vidas humanas" a través del cual una persona se obliga a indemnizar a otra o, a proveerle un beneficio específico o susceptible de ser determinado al producirse el suceso incierto previsto en el contrato.

---

"*nunc pro tunc*" a los únicos fines de eliminar la partida de honorarios de abogado.

[2] Véase, Título 26 de Leyes de Puerto Rico Anotadas (L.P.R.A.).

**Véanse, Arts. 1.020 y 4.010 del Código de Seguros, 26 L.P.R.A. secs. 101 y 404.[3] La persona a quien beneficia el contrato o póliza de seguro de vida ––la cual puede ser catalogada como beneficiario, cesionario, o tenedor legal–– *"tendrá derecho a los beneficios y ventajas de la póliza contra los acreedores y representantes del asegurado y de la persona que efectuare el seguro, y dichos beneficios y ventajas estarán también exentos de toda responsabilidad por cualquier deuda de dicho beneficiario, existente a la fecha en que los beneficios y ventajas se hicieran disponibles para su uso.*" Art. 11.330 del Código de Seguros; 26 L.P.R.A. sec. 1133. Igual derecho tiene el beneficiario de una póliza de seguro colectivo de vida.[4]**

**Así pues, el derecho que tiene un beneficiario al producto de una póliza de seguros se antepone ante las reclamaciones de los acreedores del asegurado sin distinción alguna y se antepone a las reclamaciones que pudieran tener los herederos legítimos del asegurado. <u>Fernández Vda. de Alonso</u> v. <u>Cruz Batiz</u>, 128 D.P.R. 493, 496 (1991). Sólo así se garantiza que la persona beneficiada por el asegurado no quede desamparada al éste faltar.[5]**

---

[3] El Lcdo. Manuel Tirado Viera, en su obra *Fundamentos de las Contribuciones sobre Ingresos de Puerto Rico*, 2da ed. rev., pág. 39, 1986, define la póliza de seguro de vida como aquel contrato mediante el cual el asegurador se obliga, mediante el premio estipulado, a entregar al contratante o al beneficiario un capital o renta al verificarse el acontecimiento previsto o durante el término señalado.

En la definición de seguro de vida, también está incluido el contrato o póliza de seguro de vida de grupo o colectivo, que es el seguro que un patrono paga para cubrir la vida de sus empleados. Id. pág. 47. Este es el seguro al cual se refieren los hechos de este caso.

[4] Respecto a la póliza de seguro colectivo de vida el Art. 11.340 del Código de Seguros, 26 L.P.R.A. sec. 1134 dispone, en lo pertinente que *"estará libre de reclamaciones de los acreedores del asegurado o del beneficiario o de otra persona con derecho al pago."* (Énfasis nuestro.) Véase, además, esc. 3.

[5] Sobre este particular, véase, a modo ilustrativo: <u>Milwaukee Constr. Co.</u> v. <u>Glens Falls Insc. Co.</u>, 389 F.2d 364 (9th Circ. Or. 1968) ([The] purpose of statutes exempting proceeds and cash surrender values of life policies from execution is to protect the debtor's dependents

De otra parte, a través de nuestra jurisprudencia, no sólo hemos reconocido, sino también hemos mantenido la superioridad del derecho concedido a los beneficiarios de una póliza de seguro de vida frente a cualquier reclamante del asegurado.  Sobre el particular, en <u>Fernández Vda. de Alonso</u> v. <u>Cruz Batiz</u>, supra, págs. 496-497 (1991), expresamos que "[e]l beneficiario de una póliza de seguro de vida adquiere un derecho propio que no es derivado del derecho del tomador del seguro.  En ese sentido,...  [aunque] no es parte del contrato, ... *adquiere derechos propios, nacidos del contrato mismo y no derivados del contratante que le designó*."  Así concebido, forzosa es la conclusión de que el monto de la póliza no es parte del caudal relicto, ya que el mismo no proviene de los `bienes, derechos y obligaciones del causante...´."  (**Énfasis nuestro, en el original y citas omitidas.**)  Véase, además: <u>Espósito</u> v. <u>Guzmán</u>, 45 D.P.R. 796 (1933).[6]

A pesar de nuestra interpretación jurisprudencial y de las claras disposiciones de nuestro Código de Seguros en torno al carácter preferente del que goza una persona designada como beneficiaria de una póliza de seguro de vida, frente a cualquier reclamante del asegurado, el Estado nos solicita que se le reconozca como acreedor preferente en lo que respecta al cobro de deudas por contribuciones sobre ingresos. Entiende que las determinaciones del Tribunal de Circuito y el tribunal

---

[beneficiaries] by giving them a preferred status over his or her creditors.  A statute exempting from creditors' claims the proceeds of insurance when left with the insurance policies from execution should be given liberal construction to effectuate their purpose.); e <u>In re Elliott</u>, 446 P.2d 347 (1968)( A Statute exempting proceeds and avails of life policy against creditors is remedial in nature, and enacted for the public good.)

[6]    En <u>Espósito</u> v. <u>Guzmán</u>, 45 D.P.R. 796 (1933), este Tribunal mantuvo vigente la interpretación que otorga al beneficiario de una póliza de seguro de vida una posición superior a la de otros reclamantes.  Cabe señalar que aun cuando los beneficiarios en este caso eran los herederos, la decisión estuvo encaminada a destacar que la intención del legislador fue la de permitir que este tipo de contrato se efectuara sin obstáculo alguno.

de instancia han impedido el cobro de la deuda al éstos interpretar incorrectamente las normas estatutarias relacionadas con la materia. A su juicio, al otorgar preeminencia absoluta a los Arts. 1133 y 1134 del Código de Seguros de Puerto Rico, supra, soslayan las claras y específicas disposiciones del Código de Rentas Internas de 1994 que, para fines de determinar el caudal relicto bruto de un causante sujeto a contribución, incluye cualquier cantidad de dinero proveniente de pólizas de seguro. En lo particular, se refiere a la Sec. 3031 de éste, que específicamente dispone que las pólizas de seguro de vida de un finado están incluidas en el caudal relicto bruto para propósitos contributivos. Veamos si le asiste la razón al Estado.

## III

La Sec. 3031(2)(f) del Código de Rentas Internas de 1994, 13 L.P.R.A. sec. 9131(2)(f) dispone, en lo pertinente, que:

> El caudal relicto bruto incluye cualquier cantidad de dinero proveniente de pólizas de seguro sobre la vida del causante cuando dichas pólizas son pagaderas:
>
> (1) al Administrador o a la sucesión del causante;
>
> (2) a otros beneficiarios, si el causante, solo o conjuntamente con otra persona, bien sea en forma directa o indirecta, pagaba las primas o tenía o ejercía con respecto a dichas pólizas, a la fecha de su fallecimiento, cualquier tipo de ingerencia, dominio o control sobre las mismas.

La sección antes citada es parte del Subcapítulo A-2 que trata de Caudales Relictos de Residentes de Puerto Rico. Ésta expresamente señala que el caudal relicto de un causante sujeto a contribución "incluye cualquier cantidad de dinero proveniente de pólizas de seguros sobre la vida del causante."

Es al amparo de esta disposición que el Estado entiende que puede embargar el producto de la póliza de vida, perteneciente a doña Julia,

para así, como "acreedor preferente", cobrar la deuda contributiva del asegurado, señor Malavé Vélez (causante).

Sin embargo, cuando el Estado interpreta el estatuto, pierde de perspectiva que el propio Código de Rentas Internas, específicamente en la Sec. 3051, dispone que para calcular la cantidad a pagar por contribuciones impuestas, el valor del caudal relicto tributable será determinado deduciendo del caudal relicto bruto las exenciones y deducciones provistas en la Sec. 3052, entre las cuales se encuentra [l]as cantidades pagaderas por razón de contratos de seguro sobre la vida de un residente de Puerto Rico. 13 L.P.R.A. sec. 9152(b)(5).

Como se podrá observar, de las propias disposiciones del Código de Rentas Internas se excluyen expresamente del caudal relicto bruto las sumas pagadas por razón de contratos de seguro sobre la vida de un residente de Puerto Rico.[7] Es decir, dicho Código armoniza sus disposiciones con las normas especiales que rigen el contrato de seguro de vida y, con nuestra jurisprudencia interpretativa a los fines de mantener exento al beneficiario de las reclamaciones de los acreedores del asegurado, esto, sin distinción de clase alguna.[8]

Finalmente, cabe señalar que aunque es cierto que el Estado es un acreedor preferente cuando de cobro de contribuciones se trata cuando así lo determina la ley, también es cierto que cuando se trata de una póliza de seguro de vida, el Estado, como bien hemos visto, es el que precisamente ha mantenido la supremacía del beneficiario

---

[7] Véase, además: Dr. Efraín González Tejera, *Derecho de Sucesiones*, Tomo 1, pág. 341-342.

[8] Es menester puntualizar que la superioridad del beneficiario de una póliza de seguro de vida frente a cualquier reclamante o acreedor del asegurado ha sido reiterada y ratificada por nuestras decisiones aún después de la promulgación y aprobación del Código de Rentas Internas de 1994. Véanse: Pilot Life Ins. Co. v. Crespo Martínez, 136 D.P.R. 624, 636 (1994); Méndez v. Morales, 142 D.P.R. 26, 39 (1996); e In re Barlucea Córdovez, P.C. de 15 de octubre de 2001, 155 D.P.R. ___ (2001), 2001 J.T.S. 144, 234.

frente a los acreedores y reclamantes del asegurado, esto, incluyendo al propio Estado.

Así pues, bajo estas circunstancias el autodefinirse acreedor preferente, embargar el dinero que por derecho le corresponde al beneficiario de una póliza de seguro de vida, soslaya los claros principios de hermenéutica respecto a que la legislación contributiva no debe interpretarse en forma extensiva, sino más bien de manera justa y a tenor con sus propios y expresos términos. **Talcott Inter-Amer. Corp.** v. **Registrador**, 104 D.P.R. 254, 262 (1975). **Véase, además:** **Café Rico, Inc.** v. **Mun. de Mayagüez**, Op. de 31 de octubre de 2001, 155 D.P.R.___ (2001), 2001 JTS 152, pág. 335.

En virtud de todo lo anterior, ratificamos que el monto de una póliza de seguro de vida no forma parte del caudal relicto bruto del causante. De esta manera continúa vigente la interpretación a favor del beneficiario que otorga a éste una posición superior frente a la de cualquier acreedor del asegurado, incluyendo al Estado.

IV

Por los fundamentos antes expuestos, confirmamos la sentencia del Tribunal de Circuito de Apelaciones.

Miriam Naveira de Rodón
Juez Asociada

Julia Vélez Rivera y otras

    Recurridas

        v.

                         CC-2002-233

Bristol-Myers Squibb, P.R.,
Benefits Express,
Secretario de Justicia y
Departamento de Hacienda

    Peticionarios

SENTENCIA

San Juan, Puerto Rico a 17 de septiembre de 2002

    Por los fundamentos expuestos en la Opinión que antecede, se confirma la sentencia del Tribunal de Circuito de Apelaciones.

    Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.

                      Patricia Otón Olivieri
              Secretaria del Tribunal Supremo