EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miguel González Azcuy en su calidad de Albacea de Alberto Ruisánchez Mayoral e Irma Febles Feito<br><br>    Peticionarios<br><br>        v.<br><br>Universal Solar Products, Inc.; Alfa Casting, Corp; Energy Solar Products, Inc.; World Financial Corp.; René Ruisánchez Mayoral; María Del Carmen Gelabert García y Moisés Almansa Pequeño<br><br>    Recurridos | Certiorari<br><br>2006 TSPR 18<br><br>166 DPR _____ |

Número del Caso: CC-2004-704

Fecha: 7 de febrero de 2006

Tribunal de Apelaciones:

> Región Judicial de San Juan
> Panel IV

Juez Ponente:

> Hon. Carlos Rodríguez Muñiz

Abogado de la Parte Peticionaria:

> Lcdo. José Porbén Ulloa

Abogado de la Parte Recurrida:

> Lcdo. Enrique J. Mendoza Méndez

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miguel González Azcuy en su calidad de Albacea de Alberto Ruisánchez Mayoral e Irma Febles Feito<br><br>    Peticionarios<br><br>        v.<br><br>Universal Solar Products, Inc.; Alfa Casting, Corp.; Energy Solar Products, Inc.; World Financial  Corp.; Rene Ruisánchez Mayoral; María Del Carmen Gelabert García y Moisés Almansa Pequeño<br><br>    Recurridos | CC-2004-704 |

SENTENCIA

San Juan, Puerto Rico, a 7 de febrero 2006

En enero de 2001, la Sra. Irma Flebes Feito Vda. De Ruisánchez y el Sr. Manuel González Azcuy, en calidad de albacea de don Alberto Ruisánchez Mayoral, presentaron una demanda en cobro de dinero contra las corporaciones de epígrafe, sus accionistas y las cónyuges de éstos.  Los demandantes reclamaron que los demandados habían incumplido con ciertos términos de pago acordados en un convenio suscritos entre éstos y don Alberto, en vida de éste.

Oportunamente, las demandadas contestaron la demanda y presentaron a su vez un pleito independiente de sentencia declaratoria.  Ambos casos fueron consolidados.

La controversia en el caso se circunscribió a determinar, cuál era el efecto de la cesión de una póliza de vida suscrita por el señor Ruisánchez a una de las corporaciones demandadas, sobre la designación hecha por éste de su esposa como la beneficiaria de esa póliza.

El Tribunal de Primera Instancia dictó sentencia a favor de los demandados. El Tribunal concluyó que la cesión de la póliza de don Alberto a una de las corporaciones demandadas tuvo el efecto de desplazar a su viuda, aquí peticionaria, como beneficiaria y sustituirla por la corporación cedida.

Inconforme, los demandantes acudieron ante el Tribunal de Apelaciones quien confirmó el dictamen del foro primario respecto los efectos de la cesión de la póliza sobre la designación de doña Irma como beneficiaria.

Inconforme nuevamente, los demandantes acudieron en alzada ante este Tribunal. Expedimos el auto solicitado.

Habiendo comparecido todas las partes y luego de evaluar las distintas posiciones por éstos presentadas, este Tribunal dicta sentencia revocando al Tribunal de Apelaciones. Concluimos que la cesión de la póliza de vida a Alfa Casting Corp. por parte del señor Ruisánchez no tuvo el efecto de cambiar la beneficiaria designada. Se revoca por lo tanto la decisión del Tribunal de Apelaciones y en su consecuencia se declara con lugar la demanda instada por los aquí peticionarios y se desestima la demanda de sentencia declaratoria instada por la parte recurrida.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Concurrente a la que se une el Juez Presidente señor Hernández Denton. La Jueza Asociada señora Fiol Matta emitió una Opinión Concurrente. Los Jueces Asociado señor Rebollo López y señor Fuster Berlingeri concurren en el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Manuel González Azcuy en su calidad de Albacea de Alberto Ruisánchez Mayoral e Irma Febles Feito<br><br>Peticionarios<br><br>v.<br><br>Universal Solar Products, Inc.; Alfa Casting Corp.; Energy Solar Products, Inc.; World Financial Corp.; René Ruisánchez Mayoral; María del Carmen Gelabert García y Moisés Almansa Pequeño<br><br>Recurridos | CC-2004-704 | Certiorari |

Opinión concurrente de la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 7 de febrero de 2006.

Concurro en la decisión del Tribunal porque claramente no hubo cambio en el beneficiario de la póliza de seguro de vida en este caso, pero me veo en la obligación de aclarar que los hechos ante nuestra consideración no nos requieren elaborar una nueva norma sobre el efecto de la cesión de una póliza de seguro con beneficiario de carácter revocable y que, en cualquier caso, la elaboración de una nueva norma en cuanto a esto correspondería a la rama legislativa y no a la rama judicial.

I.

El artículo 11.250 del Código de Seguros, 26 L.P.R.A. § 1125 (1997), establece que:

> Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta.

Al amparo de este artículo, la cesión de la póliza de seguro de vida es un contrato cuyos términos forman parte de la póliza misma. Además, se colige del artículo 11.250 que los cambios que pueda ocasionar una cesión sobre la póliza deben surgir **en primera instancia** de la voluntad de las partes y evaluarse a la luz de ésta, según recogida en el contrato de cesión. Con este artículo, el Código de Seguros reconoce la voluntad de las partes como el ente directivo en la interpretación de los contratos de seguros y en la ejecución de éstos.

Otras disposiciones del Código de Seguros confirman esta apreciación. Dicho Código, en su artículo 11.300,  26 L.P.R.A. § 1130 (1997),[1] dispone

---

[1] El artículo 11.300 del Código de Seguros establece que:

> Siempre que los beneficios de una póliza o contrato que haya expedido o en lo futuro expida un asegurador de vida o incapacidad, o los pagos que deba hacer sobre la misma, fueren pagaderos de

que el asegurador quedará exonerado si paga a la persona designada en la póliza o por la cesión como la persona con derecho a recibir el pago. Por su parte, el artículo 11.280, 26 L.P.R.A. § 1128 (1997)[2], establece que la cesión da al asegurador el derecho a tratar al cesionario como dueño o

---

conformidad con los términos de dicha póliza o contrato, o mediante el ejercicio de un derecho o privilegio con arreglo a los mismos, **y el asegurador efectuare el pago de acuerdo con los términos de la póliza o contrato o de conformidad con cesión por escrito de la misma, a la persona designada en la póliza o contrato o en los comprobantes del asegurador o por dicha cesión como la persona con derecho a recibir dicho pago, éste exonerará plenamente al asegurador de toda reclamación** con arreglo a la póliza o contrato, a menos que antes de efectuarse el pago, el asegurador hubiere recibido en su oficina matriz aviso escrito de otra persona o a nombre de la misma, al efecto de que dicha persona reclama tener derecho a pago o interés en la póliza o contrato. (énfasis nuestro).

[2] El artículo 11.280 del Código de Seguros dispone que:

(1) Una póliza podrá ser transferible o no transferible, según se disponga por sus términos.

(2) Con sujeción a los términos de la póliza relativos a su condición de transferible, ya hubieren sido o fueren en lo futuro cedidas dichas pólizas, una póliza expedida por un asegurador de vida o de incapacidad, con arreglo a los términos de la cual pueda cambiarse el beneficiario a petición únicamente del asegurado, podrá ser transferida, bien dándose en garantía o traspasando el título de propiedad, mediante cesión otorgada por el asegurado solamente y entregada al cesionario, fuere o no fuere el depositario o cesionario el asegurador. **La cesión dará derecho al asegurador a tratar con le cesionario como dueño o depositario de la póliza, de conformidad con los términos de la cesión,** hasta que el asegurador hubiere recibido en su oficina matriz notificación por escrito de la terminación de la cesión o la garantía. (énfasis nuestro).

(3)

depositario de la póliza de conformidad con los términos de la cesión. De estos dos artículos se desprende claramente que en casos de cesión el pago de los beneficios de la póliza se hará según quede establecido por la póliza original o por el contrato de cesión.

Reiteradamente hemos sostenido que cuando los términos, las condiciones y las exclusiones de un contrato de seguros son claros, específicos y no dan margen a ambigüedades o a diferentes interpretaciones, éstos deben hacerse valer de conformidad con la voluntad de las partes, pues en ausencia de ambigüedad las cláusulas del contrato son obligatorias. López Castro v. Atlantic Southern Insurance Company, 2003 T.S.P.R. 12; Martínez Pérez v. U.C.B., 143 D.P.R. 554, 563 (1997).

En este caso, el contrato de cesión, que es parte del contrato de seguro, es claro en cuanto a los efectos de la cesión sobre el estado futuro de los beneficiarios de la póliza. El contrato de cesión entre el Sr. Alberto Ruisánchez Mayoral y Alfa Casting, Corp. estableció que la transferencia de la póliza no representaría un cambio en la condición de los beneficiarios designados al momento de la cesión, ni constituiría una transferencia de *los intereses* de ninguno de los beneficiarios al cesionario, excepto en lo que

pudiera haber provisto el asegurado en el contrato de seguro original. También dispuso el contrato de cesión que nada de lo anterior excluía la capacidad del cesionario de revocar la designación de los beneficiarios de la póliza.[3] En ausencia de un cambio en el beneficiario de la póliza luego de la cesión y ante la inexistencia de una cláusula en el contrato de seguro original que transfiriera de

---

[3] El texto en inglés del acuerdo de cesión era el siguiente:

FOR VALUE RECEIVED, I/We hereby assign, transfer and set over into assignee/s named above and the executors, administrators, successors or assigns of said assignee/s all right, title, claim, interest and benefit which the undersigned has/have in and to the contract issued by THE TRAVERLERS INSURANCE COMPNAY, Hartford, Connecticut, identified above by contract of and name of Insures/Annuitant, any contract of additional indemnity issued in connection therewith and any contract of insurance to which therewith and any contract of insurance to which the contract hereby transferred shall be converted in accordance with the terms thereof. Pursuant to this transfer such assignee/s shall be the owner of said contract and will have the right to exercise any and all options, rights and privileges provided therein and to receive any benefits which by its terms are payable to me/us or to my/our executors or administrators.

**This transfer of ownership of the contract shall not change nor constitute a change of the beneficiary designation existing at the time of transfer, nor transfer to the assignee/s the interest of any beneficiary except as to such beneficiary interests as I/we, my/our executors or administrators may have in the contract. The assignee/s may however, following this transfer of ownership change the beneficiary designation** *unless such designation has previously been made irrevocable*. (énfasis nuestro)

Lo destacado en bastardillas en nuestra jurisdicción no tiene efecto alguno porque según el artículo 11.280 del Código de Seguros, 26 L.P.R.A. § 1128 (1997), en Puerto Rico no se puede ceder una póliza si el beneficiario fue designado con carácter irrevocable.

alguna forma *los intereses* de los beneficiarios, la única conclusión es que en este caso no hubo cambio en el beneficiario de la póliza por efecto del contrato de cesión del seguro.

## II.

La opinión concurrente de la Jueza Asociada señora Rodríguez Rodríguez sostiene que la cesión de una póliza conlleva necesariamente el cambio de beneficiario a favor del cesionario a menos que el contrato especifique lo contrario. Con ello relega a un segundo puesto la voluntad de las partes, en vez de colocarla en el puesto primario que le corresponde, como hemos hecho siempre y como lo ordena el propio Código de Seguros.

No sólo me parece innecesaria la norma así propuesta, sino que discrepo de la interpretación del artículo 11.280 del Código de Seguros en que se fundamenta. En su opinión concurrente, la compañera Jueza Asociada sostiene que la prohibición en ese artículo de la cesión de pólizas con designación de beneficiario irrevocable, implica no sólo que la única póliza cedible es aquella con un beneficiario revocable, sino que al cederse ésta el antiguo beneficiario queda automáticamente remplazado por el cesionario. Fundamenta su conclusión, básicamente, en la diferencia entre la expectativa

del beneficiario de carácter revocable y la expectativa del beneficiario de carácter irrevocable. No coincido con este razonamiento.

Sin duda, la expectativa del beneficiario con carácter revocable es mucho menor que la del que tiene carácter irrevocable. Sin embargo, ello no conlleva necesariamente que el beneficiario de carácter revocable no tenga ningún interés que deba ser protegido por el ordenamiento o por el asegurado. Tanto es así, que en este caso una mayoría de este Tribunal protegió el interés de la beneficiaria preservado por el asegurado en el contrato de cesión. Por lo tanto, la prohibición de la cesión de pólizas con beneficiarios irrevocables no excluye el que se pueda establecer, como norma en casos de cesión de seguros, que sólo se entenderá revocado el beneficiario cuando el contrato de cesión así lo disponga, o que, si no se dispone nada sólo se entenderá revocada la designación si el cesionario efectivamente realiza el cambio de beneficiario.

La cesión de pólizas de seguros suscita muchos problemas en el derecho de seguros. En muchas jurisdicciones se han adoptado, por ley, normas análogas a la que propone hoy en su opinión concurrente la Jueza Asociada señora Rodríguez.[4] En

---

[4] En este sentido, resulta de interés la norma venezolana, según la cual:

otras jurisdicciones, la doctrina y los tribunales están divididos en cuanto a los efectos de la cesión sobre el estado futuro de los beneficiarios de la póliza. Por otro lado, varias jurisdicciones han preferido no reconocer la sustitución automática del beneficiario luego de una cesión de seguro. Véase J.A. Appleman, Insurance Law and Practice, with forms, West Publishing, Minnesota, pág. 623, Vol. 2, § 987 (1966 & Supl. 2005). De hecho, la tendencia más reciente de los tribunales norteamericanos, señala Appleman, ha sido no reconocer el cambio de beneficiario por efecto de una cesión a menos que todos los requisitos para el cambio de beneficiario que exige la ley o la póliza sean cumplidos.[5]

---

El tomador podrá, en cualquier momento, ceder o pignorar la póliza, siempre que no hubiese designado beneficiario con carácter irrevocable. La cesión o la pignoración de la póliza implica la revocación del o los beneficiarios, quienes serán rehabilitados en su condición una vez cesen los efectos de la cesión o la pignoración plenamente demostrado ante la empresa de seguros. Art. 107, Ley de Contrato de Seguro, Decreto N° 1.505 de 30 de octubre de 2001.

[5] Es cierto que Appelman opina que la cesión debería resultar en el un cambio del beneficiario anterior por el cesionario, puesto que la cesión debe conllevar un beneficio para éste. J. A. Appleman, Insurance Law and Practice, with forms, West Publishing, Minnesota, pág. 463, Vol. 2A, § 1257 (1966 & Supl. 2005). Sin embargo, no obstante la lógica y bondades de esta posición, su adopción requeriría, a nuestro entender, una decisión sobre política pública que deben realizar las ramas legislativa y ejecutiva.

*Id.*, pág. 624. Véase también <u>Douglass v. Equitable Life Assur. Soc.</u>, 150 La. 519, 90 So. 834 (1922); <u>Anderson v. Broad Street Nat. Bank, Trenton</u>, 5 B. Stockton 78, 105 A. 599 (1918); <u>Johnson v. New York Life Ins. Co.</u>, 56 Colo. 178, 138 P. 414 (1913). Igualmente, los tratadistas norteamericanos señalan que los beneficios que dejaría de recibir el beneficiario en una cesión automática están siempre supeditados a los términos de la cesión. Véase L. R. Russ & T. F. Segalla, <u>Couch on Insurance 3D</u>, Thomson West, § 37:45, pág. 37-3 (1995).

La diversidad de legislaciones y la gran cantidad de posibilidades que existe en esta área evidencian la necesidad de que sea la Asamblea Legislativa y el Ejecutivo quienes determinen cuáles son los intereses que nuestro ordenamiento desea tutelar ante la cesión de una póliza. Al día de hoy el Código de Seguros es claro en cuanto a la primacía en nuestro ordenamiento de la voluntad de las partes y ese debe ser nuestro criterio guía en estos casos.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Miguel González Azcuy en su calidad de Albacea de Alberto Ruisánchez Mayoral e Irma Febles Feito<br><br>    Peticionarios<br><br>        v.<br><br>Universal Solar Products, Inc.; Alfa Casting, Corp.; Energy Solar Products, Inc.; World Financial Corp.; Rene Ruisánchez Mayoral; María Del Carmen Gelabert García y Moisés Almansa Pequeño<br><br>    Recurridos | CC-2004-704 |

Opinión Concurrente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le une el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 7 de febrero de 2006

Nos corresponde determinar en esta ocasión si la cesión de una póliza de seguros de vida por parte de su dueño y asegurado a una de las corporaciones de la cual era accionista, tiene como resultado la sustitución del beneficiario designado originalmente en la póliza por la corporación cesionaria.

I

El 14 de junio de 1985, los señores Alberto y René Ruisánchez Mayoral y el señor Moisés Almansa Pequeño, accionistas y propietarios de las compañías Alfa Casting, Corp., Universal Solar Products, Inc., World Finance, Corp. y

Energy Solar Products, Inc. (las "corporaciones"),

suscribieron un convenio entre accionistas (el "convenio").

Mediante el referido convenio, se dispuso para la adquisición

de las acciones de cualquiera de sus accionistas en la

eventualidad de que ocurriera lo siguiente:   que el

accionista decidiera disponer de las mismas durante su vida;

que cesara en sus funciones como empleado de las

corporaciones; que disolviera la sociedad de gananciales

constituida con su cónyuge; o, en caso de fallecimiento.[6]   El

convenio también dispuso que los accionistas suscribirían un

seguro de vida para que, en caso de fallecimiento, su

producto se utilizara para redimir sus acciones; a esos

efectos, el dueño y beneficiario de la póliza serían las

---

[6] La Cláusula 1.03 del convenio de accionistas expresamente disponía lo siguiente:

> Los accionistas y la corporación interesan, en beneficio mutuo y de la corporación disponer para las siguientes eventualidades:
>
> a)Proveer para la adquisición de las acciones de cualquier accionista que decida disponer de las mismas durante su vida.
>
> b)Proveer para la adquisición de las acciones de cualquier accionista cuando éste cese como empleado de la corporación.
>
> c)Proveer para la adquisición de las acciones de los accionistas en caso de una disolución de la Sociedad de Gananciales constituidas con sus respectivas esposas aquí comparecientes.
>
> d)Proveer para la adquisición de las acciones de cualquier accionista que pueda fallecer mientras este acuerdo esté en vigor y proveer los fondos necesarios para llevar a cabo las compras descritas en este acuerdo.

corporaciones.[7]  Finalmente, este acuerdo fijaba la fórmula para valuar las acciones. El acuerdo fue firmado por los accionistas, sus respectivos cónyuges y, ratificado por los hijos.[8]

Cada uno de los accionistas suscribió la correspondiente póliza de vida con la empresa Travelers Insurance Company ("Travelers") y las corporaciones figuraron como beneficiarias.

El 28 de julio de 1994, las pólizas fueron renovadas con la misma compañía para aumentar la cubierta y para designar como único beneficiario a Alfa Casting, Corp. Sin embargo, en la póliza del señor Alberto Ruisánchez Mayoral (el "señor Ruisánchez" o "don Alberto") éste designó a su esposa, la señora Irma Febles Feito (la "señora Febles" o "doña Irma"), como beneficiaria. Conforme los términos de la póliza la señora Febles fue designada beneficiaria con carácter revocable. Las corporaciones continuaron pagando las primas de todas las pólizas.

---

[7] La Cláusula 3.04 del convenio disponía:

> El precio de compra de las acciones poseídas por un **accionista fenecido** será pagado a su Sucesión o a su dueño por manda o legado dentro de los sesenta (60) días siguientes a la certificación de un representante legal de la Sucesión del accionista y si las Corporaciones han recibido el producto de la póliza de vida sobre la vida del accionista asegurado. **Todo el producto de dicha póliza de vida se utilizará para pagar el precio de compra de las mencionadas acciones irrespectivo de que a la fecha de la muerte del accionista este precio resulta menor que el producto de la póliza.** (Énfasis nuestro.)

[8] El único hijo del señor Alberto Ruisánchez que no ratificó con su firma el convenio de accionistas fue Carlos Ruisánchez Febles, por ser menor de edad en ese momento.

El 16 de agosto de 1994, don Alberto cedió su póliza a Alfa Casting, Corp. El acuerdo o endoso de cesión leía de la siguiente manera:

> FOR VALUE RECEIVED, I/We hereby assign, transfer and set over into assignee/s named above and the executors, administrator, successors or assigns of said assignee/s all right, title, claim, interest and Benefit which the undersigned has/have in and to the contract issued by THE TRAVELERS INSURANCE COMPANY, Hartford, Connecticut, identified above by contract number and name of Insures/Annuitant, any contract of additional indemnity issued in connection therewith and any contract of insurance to which the contract hereby transferred shall be converted in accordance with the terms thereof. **Pursuant to this transfer such assignee/s shall be the owner of said contract and will have the right to exercise any and all options, rights and privileges provided therein and to receive any benefits which by its terms are payable to me/us or to my/our executors or administrators.**
>
> **This transfer of ownership of the contract shall not change nor constitute a change of the beneficiary designation existing at the time of transfer,** nor transfer to the assignee/s the interests of any beneficiary except as to such beneficiary interests as I/we, my/our executors or administrators may have in the contract. **The assignee/s may however, following this transfer of ownership change the beneficiary designation unless such designation has previously been made irrevocable.** (Énfasis nuestro.)

El 31 de agosto de 1994, Travelers aceptó la cesión efectuada y así se lo notificó a Alfa Casting Corp.

El 21 de diciembre de 1999, don Alberto suscribió un acuerdo de redención de acciones ("acuerdo de redención") con las corporaciones. Mediante este acuerdo se pactó el precio correspondiente para la venta de sus acciones a las corporaciones, así como también proveyó para la liquidación de sus intereses en las mismas. Los señores René Ruisánchez

y Moisés Almansa comparecieron a esta transacción como garantizadores de las corporaciones.

Los términos pactados para la redención fueron los siguientes: El precio total acordado para la venta de las acciones fue de un millón doscientos mil dólares ($1,200,000.00), cantidad que sería satisfecha mediante un primer pago, a la fecha del cierre, de trescientos mil dólares ($300,000.00), un segundo pago de trescientos mil dólares ($300,000.00); y, un balance aplazado de seiscientos mil dólares ($600,000.00). Éste sería satisfecho en cuatro (4) plazos anuales de ciento cincuenta mil dólares ($150,000.00) cada uno. El señor Ruisánchez recibió ese día un pagaré por valor de novecientos mil dólares ($900,000.00), con fecha de vencimiento d 1ero de enero de 2004.

El acuerdo proveía como consideración adicional a la redención de acciones, el repago de una deuda de cien mil dólares ($100,000.00) que una de las corporaciones tenía con don Alberto; facilitarle a éste un automóvil "de una calidad y precio similar" al que poseía al momento de cesar como accionista así como mantener vigente el seguro del auto. También se dispuso que las corporaciones mantendrían en vigor el seguro de salud de don Alberto para su beneficio y el de su núcleo familiar, y le pagarían la hipoteca que gravaba su residencia hasta su liquidación en enero de 2005. Finalmente, el señor Ruisánchez permanecería como director de las corporaciones con derecho a recibir una dieta mensual de mil dólares ($1,000.00). **Curiosamente, ni en el acuerdo ni en el pagaré se hizo referencia alguna a la póliza de vida de**

**don Alberto ni a los fondos que se utilizarían para redimir las acciones.**

Ese mismo día, se celebraron sendas reuniones especiales de la junta de directores de las tres corporaciones a las cuales asistieron solamente los señores René Ruisánchez y Moisés Almansa. Los directores presentes renunciaron al derecho a ser convocados y autorizaron a las corporaciones a mantener vigente la póliza de seguro de vida de don Alberto. A esos efectos, cada corporación aprobó una resolución que disponía lo siguiente:

> "RESUÉLVASE, mantener el seguro de vida de Alberto Ruisánchez Mayoral, con la compañía "The Travelers", póliza #468915 por el tiempo que se mantenga la deuda con el asegurado por concepto del contrato de compraventa de acciones, por los mejores intereses de la corporación."

El 2 de noviembre de 2000, el señor Alberto Ruisánchez Mayoral falleció. El 13 de diciembre de 2000, Travelers le remitió a Alfa Casting, Corp., el cheque correspondiente al pago de la póliza de don Alberto por la cantidad de quinientos mil dólares ($500,000.00). El cheque fue librado a favor de la señora Irma Febles vda. de Ruisánchez, quien aparecía como beneficiaria de la póliza.

En esa misma fecha, Alfa Casting, Corp. le remitió a la señora Febles Feito vda. de Ruisánchez el cheque emitido por Travelers, **pero en calidad de pago parcial o abono de la deuda por concepto de la compraventa de las acciones del señor Alberto Ruisánchez Mayoral.** Posteriormente, el 15 de enero de 2001, Alfa Casting, Corp. le envió a la señora Febles Feito un cheque por cien mil dólares ($100,000.00) en

saldo del balance pendiente y además, le envió otro cheque por dos mil doscientos treinta y tres dólares con cuarenta centavos ($2,233.40) en concepto de los intereses acumulados a esa fecha. La sucesión devolvió los últimos dos cheques a las corporaciones.

El 25 de enero de 2001, la señora Febles vda. de Ruisánchez y el señor Manuel González Azcuy, éste último en calidad de Albacea de don Alberto, presentaron una demanda sobre cobro de dinero en contra de las corporaciones, sus accionistas y las cónyuges de éstos. Los demandantes reclamaron que los demandados habían incumplido con los términos de pago acordados en el convenio de redención de acciones.

Así las cosas, el 23 de febrero de 2001, las corporaciones presentaron una solicitud de sentencia declaratoria. En la misma solicitaron del tribunal que resolviera que el producto de la póliza de vida de don Alberto debía ser abonado a la deuda generada para adquirir sus acciones corporativas. Ambos casos fueron consolidados y oportunamente se contestaron las demandas instadas. Tras varios trámites procesales interlocutorios, el 29 de julio de 2002, las partes presentaron sendas solicitudes de sentencia sumaria y sus respectivas réplicas.

La controversia central entre las partes planteada al tribunal giró en torno a los efectos de la cesión sobre la designación de doña Irma como beneficiaria. Las corporaciones arguyeron que la preeminencia de los derechos del cesionario era tal que privan sobre los del beneficiario;

por lo que, una vez perfeccionada la cesión "el beneficiario no tiene reclamo alguno sobre el producto de la póliza." Además, arguyeron que la designación de doña Irma como beneficiaria fue ilegal al ser contraria a lo estipulado en el acuerdo de accionistas por lo que no generó derecho alguno a su favor. Por su parte, los demandantes y ahora peticionarios arguyeron que, fallecido el asegurado, el beneficiario de la póliza tenía un derecho superior al de cualquier reclamante; se invocó para ello lo dispuesto en *Vélez Rivera v. Bristol Myers*, res. 17 de septiembre de 2002, ___ D.P.R. ___, 2002 T.S.P.R. 123, 2002 JTS 129 e, *In re Barlucea Cordovés*, res. 15 de octubre de 2001, ___ D.P.R.___, 2001 T.S.P.R. ___, 2001 JTS 144. Además, se sostuvo que extinguidos los deberes y responsabilidades de don Alberto bajo el convenio entre accionistas en virtud del acuerdo de redención de acciones, cualquier beneficio de las corporaciones derivados de la cesión de la póliza se extinguió también.

Así las cosas, el 29 de agosto de 2003 el Tribunal de Primera Instancia dictó sentencia sumaria a favor de las corporaciones. En su dictamen, el foro de instancia concluyó que la cesión de la póliza de parte de don Alberto a Alfa Corp. tuvo el efecto de desplazar a doña Irma como beneficiaria y sustituirla por la corporación; por lo tanto, era a la corporación a quien le correspondía el producto de la póliza. En la alternativa, el foro *a quo* dispuso que en virtud del acuerdo de accionistas suscrito, "existe la

obligación de utilizar dicho producto para el pago de la deuda existente ('*pacta sunt servanda*')."[9]

Inconformes, el 29 de octubre de 2003, los aquí peticionarios acudieron ante el Tribunal de Apelaciones mediante recurso de apelación. El 30 de junio de 2004, el foro apelativo intermedio emitió una sentencia mediante la cual confirmó parcialmente la sentencia dictada por el foro primario, revocando sólo la imposición de honorarios de abogado impuesta por el foro primario. El foro apelativo concluyó que en virtud de la cesión del seguro de vida las corporaciones tenían derecho al producto de la póliza para abonarlo a la deuda contraída en la compraventa de las acciones de don Alberto.

Nuevamente inconformes, los demandantes acudieron ante este Tribunal mediante petición de *certiorari* alegando lo siguiente:

> Incidió el Honorable Tribunal de Apelaciones al determinar que el acuerdo unilateral de las corporaciones demandas de retener la póliza cedida para garantizar el pago del precio pactado formó parte del acuerdo de redención de acciones.

> Incidió el Honorable Tribunal de Apelaciones al determinar que la cesión de la póliza no se extinguió al quedar sin efecto el convenio entre accionistas en relación al Sr. Ruisánchez.

El 12 de noviembre de 2004 expedimos el auto solicitado. Las partes han comparecido por lo que estamos en posición de resolver y pasamos a así hacerlo.

---

[9] Apéndice, petición de *certiorari*, pág. 12.

## II

El Código de Seguros de Puerto Rico recoge el conjunto de normas especiales que reglamentan el negocio de seguros, incluyendo claro está, los variadísimos contratos que ha generado esta industria.  26 L.P.R.A. secs. 101, *et seq*.

Una de las categorías de contratos de seguros regulados en el Código es el seguro sobre la vida.  Éste tiene por finalidad la cubierta de riesgos relativos a la persona humana.  Art. 4.020 del Código de Seguros, 26 L.P.R.A. sec. 402.  J. M. Elguero Merino, *El Contrato de Seguro*, Fundación Mapfre, Madrid, 2004, pág. 25 ("los seguros de personas tienen como característica principal el hecho de ser la persona humana el objeto asegurado . . ..")  Podemos definirle como aquel contrato mediante el cual el asegurador, a cambio de una prima única o periódica, se obliga a satisfacer al suscriptor de la póliza o la persona que él designe, un capital o una renta cuando la persona asegurada fallezca, llegue a determinada edad o se altere su salud o su integridad física.  O. Greco, *Diccionario de Seguros*, Ediciones Valleta, Buenos Aires, 2004.

La industria del seguro reconoce dos tipos principales de seguros sobre la vida, la llamada póliza a término ("term insurance") y la póliza de vida entera o póliza ordinaria ("whole life").  Elguero Merino, *op. cit.*, págs. 156-158, sec. 2.2.  Bajo los términos de la póliza a término, la vida del asegurado está cubierta por un periodo de tiempo fijo y el beneficiario recibe el producto de la misma siempre y cuando el fallecimiento del asegurado ocurra durante el

término de vigencia de la póliza. R. Jerry, *Understanding Insurance Law*, Lexis-Nexis, 3rd. Ed., 2002, pág. 36. (*"Term insurance* is essentially pure insurance. The insured purchases coverage for a specified duration and the designated beneficiary collects the proceeds only if the insured dies within the specified term.") (Énfasis en original.)

De otra parte, la póliza de seguro ordinaria se ha descrito como una póliza a término y un instrumento de ahorros. *Loc. cit.* ("whole-life insurance, . . . , is really two things in one: it is a policy of term insurance and a savings plan.") El componente de ahorro de esta póliza permite que el asegurado tome a préstamo contra el valor en efectivo de la póliza; o, bajo ciertas condiciones, que pueda recuperar su valor de rescate ("cash value" o "surrender value").

Los elementos personales que intervienen en un contrato de seguro de vida, además del asegurador, son: el asegurado, que es la persona sobre cuya vida se hace el seguro y cuya muerte obliga al asegurador a satisfacer el capital o renta asegurados. El tomador, suscriptor o contratante que es quien estipula el contrato con el asegurador y firma la póliza. Finalmente, el beneficiario quien no es parte del contrato, pero es la persona que aparece como titular del derecho a la indemnización pactada una vez se produzca el fallecimiento del asegurado. Véase, Elguero Merino, *op. cit.*, pág. 155; R. Uría, *Derecho Mercantil*, Madrid, 1982, 12ma ed., págs. 608-609; J. Garrigues, *Curso de Derecho*

*Mercantil*, Ed. Temis, Bogotá, 1987, Tomo IV, págs. 351-356. No es necesario sin embargo, que estas distintas figuras jurídicas la encarnen personas diferentes.

Por otro lado, el Código de Seguros autoriza y regula la cesión de la póliza de seguros. Art. 11.280 del Código, 26 L.P.R.A. 1128.[10] En cuanto a la cesión de un seguro de vida, el Código dispone que sólo podrá cederse aquella póliza en la cual la designación del beneficiario fuera de carácter revocable, y sólo a petición del propio asegurado. *A contrario sensu*, si la designación del beneficiario es irrevocable, el Código de Seguros no admite su cesión al no autorizarla expresamente. La cesión de la póliza puede ser en calidad de garantía o traspasando la titularidad misma de la póliza.

---

[10] El Art. 11.280 del Código, 26 L.P.R.A. 1128, establece lo siguiente:

> (1) Una póliza podrá ser transferible o no transferible, según se disponga por sus términos.
>
> (2) Con sujeción a los términos de la póliza relativos a su condición de transferible, ya hubieren sido o fueren en lo futuro cedidas dichas pólizas, **una póliza expedida por un asegurador de vida o de incapacidad, con arreglo a los términos de la cual pueda cambiarse el beneficiario a petición únicamente del asegurado, podrá ser transferida, bien dándose en garantía o traspasando el título de propiedad, mediante cesión otorgada por el asegurado solamente y entregada al cesionario,** fuere o no fuere el depositario o cesionario el asegurador. La cesión dará derecho al asegurador a tratar con el cesionario como dueño o depositario de la póliza, de conformidad con los términos de la cesión, hasta que el asegurador hubiere recibido en su oficina matriz notificación por escrito de la terminación de la cesión o la garantía. (Énfasis nuestro.)

Efectuada la cesión de la póliza habrá que formularse la siguiente interrogante: ¿qué derechos le asisten al cesionario y cómo se afectan los intereses del beneficiario designado previo a la cesión, sobre la prestación del seguro? Tanto el foro primario como el intermedio respondieron a esta interrogante afirmando que el cesionario tiene un derecho superior al del beneficiario y que, efectuada la cesión, el primero sustituye al segundo y por lo tanto es quien tiene el derecho a recibir el producto de la póliza.

En el pasado, no habíamos tenido ocasión de abordar la controversia que hoy está ante nuestra consideración. A poco que repasemos la doctrina norteamericana vigente,[11] nos percataremos que no hay unanimidad en la jurisprudencia o los tratadistas sobre cómo atender este asunto, aunque sí existe una clara tendencia.[12] Veamos.

---

[11] En Puerto Rico, de ordinario, las pólizas de seguros vendidas son pólizas modelos que se asemejan o son idénticas a los distintos tipos de seguros que se venden en los Estados Unidos. En la medida que las pólizas que interpretemos sean semejantes a las utilizadas en los Estados Unidos, la jurisprudencia federal y estatal norteamericana es de "una obvia utilidad y gran valor persuasivo en nuestra jurisdicción." *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991); *Quiñónez López v. Manzano Pozas*, 141 D.P.R. 139, 157 (1996).

[12] Esta problemática no se plantea en España habida cuenta que la Ley de Contrato de Seguro de 8 de octubre de 1980 (BOE, 17 de agosto) dispuso en su Artículo 99, específicamente, que la cesión o pignoración de la póliza de vida "implica la revocación del beneficiario" y por ello, no se admite cuando el beneficiario ha sido designado con carácter irrevocable. F. Sánchez Calero, *Ley de Contrato de Seguro*, Aranzadi Editorial, Pamplona, 1999, págs. 1817-1826; J. Garrigues, *Curso de Derecho Mercantil*, Ed. Temis, Bogotá, 1987, 7ma ed., pág. 363; C. Boldó, *El beneficiario en el seguro de vida*, J. M. Bosch Editor, Barcelona, 1998, págs. 295-296. Véase además, Martínez Jiménez, La cesión de la póliza de seguros, 1992 *R.D.P.* 69.

Iniciamos, resaltando la diferencia entre la facultad para designar un beneficiario y la facultad para ceder una póliza. El derecho a designar el beneficiario se refiere al poder de nombramiento; el cual se debe ejercer de la forma que especifica el contrato de seguros. L. Russ, T. Segalla, *Couch On Insurance 3d*, West Publishing, Vol. 2, 1995, Sec. 34.10, pág. 34-11. El beneficiario puede ser designado de forma irrevocable o por el contrario, revocable. En este último caso la doctrina asevera que el beneficiario no tiene un derecho adquirido sobre el producto de la póliza; sino más bien, una mera expectativa. Martínez Jiménez, *La cesión de la póliza de seguros*, 1992 *R.D.P.* 69, 82 ("A nuestro modo de ver, solo la designación del beneficiario con carácter irrevocable permite reconocer su plena titularidad sobre el derecho a la prestación del asegurador, que no podrá exigir en tanto no se produzca el fallecimiento del asegurado.") Véase, Del Caño Escudero, *Derecho español de seguros,* Madrid, 1983, 3ra ed., tomo I, págs. 415-416, citado en Martínez Jiménez, *op. cit.*, pág. 81 n. 15 ("[la] designación revocable del beneficiario otorga a éste una mera expectativa y no un derecho de propiedad . . . en caso de designación irrevocable, el beneficiario adquiere inmediatamente la condición de titular de la prestación del asegurador, si bien condicionada al fallecimiento del asegurado.") En igual sentido, R. Jerry, *Understanding Insurance Law*, Nexis-Lexis, 2002, sec. 52[A][a], págs. 346-347. Ahora bien, acaecido el fallecimiento del asegurado deviene en un derecho adquirido del beneficiario el producto de la póliza.

Mientras, la cesión conlleva la transferencia de los derechos o intereses que se tienen sobre la póliza, se ancla sobre un convenio y, generalmente requiere la entrega de la "cosa cedida."[13]  L. Russ, T. Segalla, *op. cit., s*ec. 34.10, pág. 34-11.  Recordemos, la cesión puede ser de la titularidad de la póliza o en calidad de garantía.  Como toda cesión de contrato, supone "la ocupación por parte del cesionario de la posición jurídico-contractual que hasta el momento de la cesión ocupaba el cedente."  J. Navarro Pérez, *La cesión de créditos en el Derecho civil español*, Ed. Ibarra de Arce, Córdova, 1998, 2da ed., pág. 89.  Ello presupone la subrogación del cesionario en la situación jurídica que ocupaba el cedente en la relación jurídica base, generada por el contrato cedido.  F. Sancho Rebullida, *La novación de las obligaciones*, Ed. Nauta, Barcelona, 1964, pág. 461.

Sobre la controversia precisa que hoy nos ocupa, los tratadistas Russ y Segalla, *op. cit.*, sec. 34.12, pág. 34.12, indican lo siguiente:  "There is considerable authority which supports the proposition that the assignment may effect a change of beneficiary by, in effect, substituting the

---

[13] Esta distinción quedó claramente demarcada en, *Anderson v. Broad Street Nat. Bank*, 105 A. 599, 601 (N.J. 1913) donde se indicó:

> The assignment of a policy and a change of beneficiary are not the same, but different, things.  An assignment is the transfer by one of his right or interest in property to another.  It rests upon contract, and, generally speaking, the delivery of the thing assigned is necessary to its validity.  The power to change the beneficiary is the power to appoint.  The power of appointment must be exercised in the manner agreed upon in the contract to of insurance.

assignee as a new beneficiary." De igual manera, el profesor

Abraham apunta lo siguiente:

> Ownership of a policy is an issue separate but related to the designation of beneficiaries. A life insurance policy is an asset that can be sold, or 'assigned', as insurance terminology put it. **It is virtually everywhere agreed that an assignment that complies with the notice provision of a policy automatically makes the assignee the beneficiary, unless and until the assignee himself makes further change.** (Énfasis nuestro.)

K. Abraham, *Insurance Law and Regulation*, Foundation Press, 3ra ed., 2000, pág. 29.

Los tratadistas reconocen a su vez que aun cuando ésta es la posición mayoritaria, en algunas jurisdicciones se ha resuelto en contrario y se ha reconocido que la cesión no opera como una sustitución automática del beneficiario. El profesor Jerry indica: "courts are divided on the effect of assignment on the beneficiary's rights, including the question of whether the assignment is tantamount to a change of beneficiary." R. Jerry, *op. cit.*, sec. 52B [d][1], pág. 373. Véase también, Appleman, *Insurance Law and Practice*, West Publishing, Vol. 2, 1966, sec. 987, pág. 623. ("There is a sharp conflict of authority as to the efficacy of assignments as constituting changes of beneficiary.")[14]

---

[14] Los siguientes casos sostienen la posición de que el beneficiario queda sustituido en su posición en virtud de la cesión de un seguro de vida: *Bell v. García*, 639 S.W.2d 1985 (Mo. 1982); *Davis v. Modern Industrial Bank*, 18 N.E.2d 39 (N.Y. 1939); *Potter v. Norhtwestern Mut. Life Ins. Co.*, 247 N.W. 669 (Iowa 1933); *Antley v. New York Life Ins. Co.*, 137 S.E. 199 (S.C. 1927); *Merchants' Bank v. Garrad*, 124 S.E. 715 (1924); *Mente v. Townsend*, 59 S.W. 41 (Ark. 1900); *Mutual Benf. Life Ins. Co. v. Swett*, 222 F. 200 (6th Cir. 1915); *Lovinger v. Garvan*, 270 F. 298 (D.C. N.Y. 1920); *Aetna Life Ins. Co. v. Phillips*, 69 F.2d 901 (10th Cir. 1934). Por otro lado, en los siguientes casos se sostiene la posición

La posición mayoritaria se basa en que el beneficiario revocable no ostenta ningún derecho sobre la prestación del seguro, sino una mera expectativa. Expectativa, que está sujeta siempre al ejercicio de los derechos que la póliza le reconoce al dueño o asegurado; tales como, cambiar al beneficiario. La designación de beneficiario será entonces una directriz impartida al asegurador para que en su día, y de no haberse variado la designación, pague a quién allí aparezca nombrado.

Por el contrario, el titular de la póliza conserva todos los derechos que en tal calidad goza sobre la misma; derechos que cede al cesionario quien entonces se subroga en la posición jurídica que ocupaba el cedente en la relación base que generó la póliza expedida. Forzosamente entonces hay que concluir que el derecho del cesionario, --titular de la póliza-- sobre el seguro de vida y su prestación es superior al interés que pueda reclamar el beneficiario.

Esta posición, que goza de la aceptación en la mayoría de las jurisdicciones norteamericanas --así como de los tratadistas que han abordado el tema-- es la que a nuestro juicio se ajusta más al esquema dispuesto en el Código de Seguros. Nos explicamos.

Como vimos, el Art. 11.280 del Código de Seguros autoriza la cesión de una póliza de seguros; pero, no provee

_____

contraria: *Rountree v. Frazee*, 209 So.2d 424 (Ala. 1968); *Goldman v. Moses*, 191 N.E. 873 (Mass. 1934); *Barbin v. Moore*, 159 A. 409 (N.H. 1932); *Sullivan v. Maroney*, 78 A. 150 (N.J. 1910); *Neary v. Metropolitan Life Ins. Co.*, 103 A. 661 (Conn. 1918); *Douglass v. Equitable Life Assurance Soc*. 90 So. 834 (La. 1922); *Continental Assurance Co. v. Conroy*, 209 F.2d 539 (3rd Cir. 1954). Véase además, 83 A.L.R. 62.

para la cesión cuando la designación del beneficiario fue con carácter de irrevocabilidad. Nuevamente, el texto de la ley dispone, en lo pertinente: "una póliza expedida por un asegurador de vida o de incapacidad, con arreglo a los términos de la cual **pueda cambiarse el beneficiario a petición únicamente del asegurado, podrá ser transferida**, bien dándose en garantía o traspasando el título de propiedad." La ausencia de autorización expresa para ceder la póliza cuando el beneficiario es designado irrevocablemente implica que de ordinario, y salvo pacto en contrario, la cesión de una póliza de vida conllevará siempre el cambio de beneficiario pues de lo contrario, lo dispuesto en el Art. 11.280 sería superfluo.

Es decir, la cesión, de suyo, supone un cambio en beneficiario y es por ello que el Código de Seguros sólo la admite para la cesión de un seguro de vida o incapacidad cuando la designación del beneficiario es revocable. Aunque reconocemos que ciertamente la disposición estatutaria antes transcrita no es un modelo de prístina redacción, ésta es la interpretación más lógica del contenido y alcance de la misma; así como la más cónsona con el esquema estatutario establecido en el Código y acorde con la normativa prevaleciente sobre este particular.

Adviértase, que el Art. 11.330 del Código de Seguros, 26 L.P.R.A. 1133, ya le reconoce al cesionario el derecho a recibir la prestación del seguro, al indicar que "el beneficiario, cesionario o tenedor legal de una póliza . . . tendrá derecho a los beneficios y ventajas de la póliza."

Por operación de este artículo la cesión conlleva el derecho a recibir el producto del seguro.

Entiendo por lo tanto, **que la cesión de la titularidad de una póliza de vida**, tal y como ocurrió en el caso de autos, conlleva necesariamente el desplazamiento del beneficiario y como resultado de ello, será el cesionario quien tendrá derecho a la prestación de la póliza, claro está, salvo pacto en contrario.

Esta determinación sin embargo, no dispone del caso de autos pues aun debemos auscultar los términos mismos de la cesión. Veamos entonces.

### III

Indicamos anteriormente que la cesión del contrato de seguros se ancla sobre un convenio, el cual conforme los términos de la póliza que nos ocupa forma parte de la póliza misma. Art. 11.250 del Código de Seguros, 26 L.P.R.A. sec. 1125. Toda póliza de seguros es, en última instancia, un contrato y como todo otro contrato constituye la ley entre las partes. Así, cuando los términos de la póliza son claros, específicos y libre de ambigüedades, las partes tienen que atenerse a lo allí dispuesto. *López Castro v. Atlantic Southern Ins. Co.*, res. 11 de febrero de 2003, \_\_\_ D.P.R. \_\_\_, 2003 JTS 14; *Quiñónez López v. Manzano Pozas*, 141 D.P.R. 139 (1996); *Meléndez Piñero v. Levitt & Sons of Puerto Rico, Inc.*, 129 D.P.R. 521 (1991); *González Burgos v. Coop. de Seguros de Vida de Puerto Rico*, 117 D.P.R. 645 (1986).

A poco que revisemos la cesión efectuada en este caso nos percatamos que **en la misma se especificó con gran**

**claridad que la cesión no conllevaba un cambio en el beneficiario designado.** Se indicó en la misma: "This transfer of ownership of the contract shall not change nor constitute a change of the beneficiary designation existing at the time of transfer." Y más adelante, la cláusula en cuestión facultó al cesionario a cambiar la designación de beneficiario si así lo desea. **"The assignee/s may however, following this transfer of ownership change the beneficiary designation . . . ."**

Los términos transcritos revelan, sin ambages, que la cesión del contrato de seguros en este caso no conllevó un cambio en el beneficiario, al haberse pactado en contrario. Le correspondía a Alfa Casting, Corp., como cesionaria, efectuar el cambio correspondiente designándose a sí misma como beneficiaria del seguro de vida. De haberlo hecho durante la vida de don Alberto, doña Irma no tendría ningún derecho sobre la prestación de la póliza. Una vez falleció don Alberto, la beneficiaria fue investida con el derecho a recibir el monto de la póliza sobre la vida de su fenecido esposo. Ya en esta etapa, su derecho era superior al de cualquier otro que reclamase un interés en la realización de la póliza. *Fernández Vda. De Alonso v. Cruz Batiz,* 128 D.P.R. 493, 496 (1991); *In re Barlucea, ante.* Ello, independientemente del origen del dinero utilizado para pagar las primas. *Espósito v. Guzmán,* 45 D.P.R. 796, 801 (1933); *Pilot Life Ins. Co. v. Crespo Martínez,* 136 D.P.R. 624, 634 (1994). Véase además, Art. 11.330 del Código de Seguros, 26 L.P.R.A. sec. 1133.

Es por ello que entiendo que, toda vez que Alfa Casting Corp., cesionaria de la póliza de vida del señor Ruisánchez, no ejerció su derecho a cambiar el beneficiario que figuraba en la misma, y toda vez que bajo los términos de la póliza la cesión de ésta no conllevaba el cambio de beneficiario, hay que concluir que la persona con derecho a la prestación de la póliza de vida es la beneficiaria, doña Irma Febles vda. de Ruisánchez, y no la cesionaria.

Finalmente, los recurridos arguyen que bajo los términos del acuerdo entre accionistas el producto de la póliza debe utilizarse para sufragar los costes de redención de las acciones de don Alberto. No tienen razón.

Las disposiciones del acuerdo entre accionistas pretendían regular y vincular las relaciones entre **los accionistas**. Una vez don Alberto vendió sus acciones a las corporaciones cesando como accionista, las disposiciones de dicho acuerdo necesariamente pierden eficacia respecto su persona. No podemos en su consecuencia hacer extensivo las obligaciones allí enumeradas a una parte que ya no está vinculada por el acuerdo.

Curiosamente, el acuerdo de redención de acciones suscrito por don Alberto y las corporaciones fue claro y detallado respecto las obligaciones de cada cual. El mismo nada dispuso respecto el seguro de vida de don Alberto, como tampoco hizo referencia a los fondos que se utilizarían para

la redención de las acciones.[15]   El acuerdo de redención es el documento que a partir de la fecha en que don Alberto cesó como accionista, regulaba las relaciones de éste con las corporaciones de las cuales él fue codueño y este documento nada dispuso sobre el particular.   No hay cabida entonces para la interpretación que nos proponen los recurridos. Éstos nunca cambiaron la designación de beneficiario como estaban facultados para así hacerlo.

Por los fundamentos antes transcritos concurro con la sentencia dictada en la cual se revoca la decisión del Tribunal de Apelaciones y se desestima la demanda instada por la parte aquí recurrida, y se declara con lugar la demanda presentada por los demandantes peticionarios.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada


---

[15] Ello, a pesar de que sí dispuso que las corporaciones mantendrían vigentes el seguro de salud de don Alberto y el seguro para su automóvil.